**WENIGER et al. v. UNITED STATES.**
**No. 6168.**

Circuit Court of Appeals, Ninth Circuit.
Feb. 24, 1931.

Rehearing Denied March 23, 1931.

Turner, Nuzum & Nuzum, of Spokane, Wash., and O. J. Bandelin, of Sandpoint, Idaho, for appellants.

H. E. Ray, U. S. Atty., and Sam S. Griffin, W. H. Langroise, and Ralph R. Breshears, Asst. U. S. Attys., all of Boise, Idaho.

Before RUDKIN and WILBUR, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

Appellants were charged by the indictment in the District Court with having engaged in a conspiracy to violate the National Prohibition Act. Conviction of the offense was followed by judgments of imprisonment. During all of the time that the alleged conspiracy continued, appellant Weniger was the sheriff of the county of Shoshone, in the state of Idaho, and appellant Bloom was a deputy sheriff in the same county. The alleged conspiracy had to do with the selling and dealing in intoxicating liquor in the village of Mullan, which village contained a population of about 3,000 inhabitants and is located seven miles from Wallace, the county seat of Shoshone county, where the sheriff had his office. The deputy Bloom lived in the village of Mullan.

A number of other persons were included as defendants and convicted of the offense charged. Among the latter were persons who had served as members of the board of trustees and police officers of the village. None of the latter appealed from the judgments.

It was the contention of the prosecution, and the evidence shown in the record seems to establish the truth of the charge in that respect, that the city officials of the village of Mullan purposely encouraged and connived at the unlawful sale of liquor within the town by collecting monthly license charges and contributions of money from persons dealing in liquor, in order that the revenue for village upkeep and improvements might be augmented. It was shown, without question, that the city officials did agree that in consideration of the payment of license fees and contributions from liquor sellers, the business of the latter would not be interfered with. It matters not that the ordinances imposing a license tax, as adopted by the board of trustees, might have been within the power of the board to enact. Where the underlying purpose was to use the same in promoting the business of liquor selling in violation of the National Prohibition Act, such purpose, and the conduct of the officers pursuant thereto, would establish the truth of the charge made by the indictment as against the persons so involved.

The evidence of the government was confined to the showing of a violation of the Na-

tional Prohibition Law within the limits of Mullan. The conspiracy charged was pointed to that locality and that locality alone. Obviously the county officers of the county of Shoshone, of which the sheriff was one, had no jurisdiction of or control over actions of the board of trustees of Mullan, or the police officers working under the direction of said board. So far as the conduct of the village affairs was concerned, the sheriff and his deputy were outsiders with separate and distinct functions having to do not at all with the local business. It is not claimed, nor was it shown, that either of appellants connived with the board of trustees or other village officers in arranging for the collection of the license charges and the money contributions which were collected. This being true, it was necessary that the government show by some substantial evidence the participation by appellants in other ways in the unlawful scheme.

The crime of conspiracy (title 18 U. S. Code, § 88 [18 USCA § 88]) consists in the combining or confederating of two or more persons with the purpose of committing a public offense. It is distinct from the offense intended to be accomplished as a result of the conspiracy and is complete upon the forming of the criminal agreement and the performing of at least one overt act in furtherance of the unlawful design. U. S. v. Rabinowich, 238 U. S. 78, at page 85, 35 S. Ct. 682, 59 L. Ed. 1211; Callan v. Wilson, 127 U. S. 540, at page 555, 8 S. Ct. 1301, 32 L. Ed. 223; Clune v. U. S., 159 U. S. 590, at page 595, 16 S. Ct. 125, 40 L. Ed. 269.

The failure of a person to prevent the carrying out of a conspiracy, even though he has the power so to do, will not make him guilty of the offense without further proof that he has in some affirmative way consented to be a party thereto. Neither will the commission of an overt act, though unlawful in itself, be enough to show that the actor was a party to the conspiracy. The law requires proof of the common and unlawful design and the knowing participation therein of the persons charged as conspirators before a conviction is justified.

The United States attorney relies largely upon a showing of inaction on the part of the sheriff of the county and his deputy in enforcing the liquor laws as establishing connection of these appellants with the conspiracy charged.

There existed at the time a law in the state of Idaho prohibiting the sale of intoxicating liquor, and no doubt it was the duty of the sheriff to enforce that law. Apparently he was not disposed to do this and apparently, too, this action on his part applied to all parts of his county, and not in particular to the village of Mullan.

We will advert briefly to the most pertinent features of the evidence relied upon by the government to support the conviction of appellants, and also to certain errors assigned respecting the admission of testimony against the appellants' objections. The summary now given is not an abstract of all of the evidence offered by the government, but it fairly represents the class of proof relied upon, taken in a light most damaging to appellants.

It was shown that appellant Bloom drank whisky at a place kept by one of the witnesses at Mullan on several occasions; that Bloom did not interfere with the selling of liquor; that in 1928 at Christmas time, the federal officers were reported to be making raids in the village and appellant Bloom said to the witness referred to, "You got your car here, get your stuff in the car and get it out of here, get it out of the way." That on or prior to the day of election when county officers were to be voted for, Bloom solicited the aid of the same witness, and the latter donated the use of his car for election purposes. Appellant Weniger was a candidate for re-election at that time. During the political campaign, appellant Weniger, with other persons, had visited the bar kept by the witness. The witness stated that he had served drinks to the companions of Weniger, but he was not certain whether Weniger had partaken of any intoxicating drinks. On another occasion, after the witness had given an affidavit to federal officers respecting the sale of liquor in Mullan, he was asked to visit the office of the sheriff, who there charged him with making beer. The witness in that connection testified as follows:

"And he (Weniger) made several accusations to try and rile me up, and I told him they were false, and we got to talking things over, and he says I was up in that country stooling, that I was helping the Government men out, that I was stooling on these joints around town, and that the companies—well, through the conversation he told me that the heads of the companies made him run these places, leave them run wide open, and finally then finished up, he told me to keep out of them joints. He accused me of just getting out of jail in Montana, and different things like that and he accused me of not being married."

Another witness named Barron, a miner, testified that he gave information to two federal prohibition agents respecting the liquor traffic in Mullan; that on a certain day thereafter he was in Wallace, the county seat, and saw appellant Weniger; that he (the witness) had an altercation with a woman on the street and that Weniger and Bloom arrested him and put him in jail (he later pleaded guilty to a criminal charge); that Johnson and Webb, federal agents, came to the jail and Weniger said to the agents: "I have got your federal stoolpigeon here. What do you mean by it?" The witness stated further that Weniger wanted to know of the federal agents whether the witness was a federal man or not, and that heated words passed between the men, after which Weniger said: "I wish you would stay out of my county, I can look after my county better without your help." At the time he was arrested by Weniger, the witness stated that a notebook was found on his person and that Weniger remarked to him: "You should not do anything like that, go ahead and stool on these people. I will deport you into Canada if you come up here from Canada and try to get smart."

One of the federal agent's testimony in substance corroborated the statements of the witness Barron. The same agent testified that when he was first assigned to that location, he talked with the sheriff Weniger, and told him that he was going to be stationed there and asked him if there would be a chance to get "a little help if a fellow needed it," to which the sheriff had replied, saying "that he had all he could handle without doing anything with the prohibition, and that his men," referring to his deputies, were under bond, "that if they did go out with us fellows, we might shoot somebody and he would get in trouble over it." He testified further that he had never received assistance from the sheriff in his enforcement work.

Very many alleged errors were assigned to rulings made by the court in disposing of objections interposed by these appellants. It may be first stated that the testimony was given a wide range in showing vice conditions as they existed in the village of Mullan during the period of the alleged conspiracy. The government was permitted to show that the officials of Mullan collected a license tax and contributions from gamblers, and women of ill fame, and that all sorts of vice flourished practically undisturbed in the village. Competency was claimed for this evidence on the ground that the assorted vice was so intermingled with the business of liquor selling that it could not be separated. In the main this was probably so as affecting the actions of the village officials.

Specific objection was made to the testimony respecting the loaning of an automobile for campaign purposes at the election by a man who was violating the law by selling liquor, and to all of the testimony tending to show open violations of law other than that of liquor selling.

On cross-examination, after the appellant Bloom had testified that upon a visit to a house called The Bilberg, where he saw card playing but did not know what the game was, the United States attorney proceeded at considerable length in his cross-examination on this line, pressing the witness to know why he had not investigated the game to determine whether it was a gambling game; asking him whether he had not taken an oath to enforce the law; asking whether there was not a law against gambling; asking him whether he had never heard any reports of gambling at The Bilberg, and also in another place called Central Hotel Bar; and finally inquiring of the witness whether he was not interested in knowing that there was gambling there.

While the testimony referring to the action of the witness who said that he had loaned the use of his automobile for election purposes on the day when Weniger was a candidate was competent as a circumstance to show a friendly interest on the part of the liquor seller in the success of Weniger, it must be said that it approached the borderline.

The cross-examination of appellant Bloom respecting his knowledge of the prevalency of gambling in Mullan had no reasonable relation to the charge being investigated, and the objection to that line of examination was pertinent. The intimation that Bloom, as an officer, allowed other forms of law violations to be carried out without interference would tend naturally to create in the minds of the jury a prejudice against him and his superior officer. Those facts were not relevant to the question as to whether the appellants had engaged in the conspiracy to violate the National Prohibition Act in the village of Mullan as the indictment charged and the admission of the testimony was error.

In the case of Allen v. United States, 4 F.(2d) 688 (C. C. A. 7th), cited by appellee, a charge of conspiracy like that considered here was involved, and included as defendants city officers and justices and constables

as well as a sheriff and several of his deputies. A conviction was sustained by the Circuit Court of the Seventh Circuit, but the opinion does not show what evidence there was as to acts done by the sheriff or his deputies by which they were held to be conspirators with the other persons concerned.

The case as made here by the evidence of the prosecution can be said to go no further than to establish that the sheriff of Shoshone county felt no interest in, but was opposed to, the enforcement of the National Prohibition Act. The evidence, in our opinion, falls short of showing that the particular conspiracy which was organized by the city officials of the village of Mullan was joined in by these appellants.

The judgments are reversed.