## JOHNSON et al. v. UNITED STATES.
### No. 6864.

Circuit Court of Appeals, Ninth Circuit.
Dec. 5, 1932.

Henry Clay Agnew, of Seattle, Wash., for appellants.

Anthony Savage, U. S. Atty., of Seattle, Wash., and Joseph A. Mallery, Asst. U. S. Atty., of Tacoma, Wash., and Cameron Sher-

wood, Asst. U. S. Atty., of Seattle, Wash., for the United States.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

Appellants were convicted by a jury of conspiring with several others to violate the federal prohibition laws, as charged in count 1 of the indictment, and of violating the internal revenue laws and the federal penal code, as charged in counts 2, 3, and 4. The other defendants pleaded guilty. Appellants duly challenged the sufficiency of the evidence by a motion for a directed verdict.

Appellants were at one time connected with the federal prohibition department in Seattle. In November, 1930, they conspired with their codefendants, Gordon, Jauranas, Salo, and Menkes, to erect a still for the manufacture of intoxicating liquor. Appellants represented themselves as able to furnish protection for the enterprise.

On the trial appellants admitted that they were parties to this conspiracy, but contended that their motive in joining the conspiracy was to obtain information which they intended to turn over to the prohibition department and claim a reward; but the government asserted a guilty motive, and the jury so found.

A site referred to as the Donkers ranch, in King county, Wash., was selected as the location of the proposed still, and the necessary equipment was purchased. December 11, 1930, prohibition agents observed members of the conspiracy conveying the still equipment to the proposed site on the Donkers ranch. The conspirators also observed the agents, and abandoned their journey and returned to Seattle. No attempt was thereafter made to erect the still on the Donkers ranch and that proposed location was abandoned.

Appellants' fellow conspirators then became suspicious of appellants and thereafter gradually eliminated them from further activities relating to the selection of a new still site and the erection of a still thereon. Within a month, Salo, one of the conspirators, dropped out and left the state, and one Schloss and one Sadick were then taken into the conspiracy. The new site was located in Pierce county, Wash., and known as the Benston ranch, where the still was erected in March, 1931, and where defendants, not including appellants, were arrested in July, 1931. The manner in which the other defendants got rid of appellants, or attempted to do so, is described as follows by defendant Gordon:

"We decided that the Donkers place was too hot, and we immediately moved the equipment from that place and stored it in Seattle for a time. We continued to look for locations in Kitsap and Skagit Counties, Johnson and Stickels assisting us. I didn't like the way things were going, but we did not dare to throw Johnson and Stickels overboard for fear they would hinder our intended operations. I continued to give them $10 and $20 at different times to satisfy them. They were continually making demands upon us for money, although our agreement was that they should not receive any money until we had set up our still and got under way. Johnson and Stickels attended numerous meetings at Schloss' and Stickels' apartments in Seattle, at which plans for the future were discussed. These meetings were held early in January, 1931. All during this time we had been looking for locations, but gradually we drew away from Johnson and Stickels with the intent to ultimately get rid of them because we did not trust them. Stickels told us later that he had made arrangements for protection in Pierce County. * * *

"About this time we had a meeting at Schloss' apartment. Jauranas, Schloss, Menkes and myself were present. Menkes and I had found what we considered to be an ideal location in Pierce County. Schloss then said that he had necessary connections for protection, that he knew some parties who were in a position to give us complete protection in Pierce County and that if we would let them know where the place was they could make arrangements to rent the place. I asked Schloss who these men were. Because of our experience with Johnson and Stickels I wanted to be sure this time. He told us that Bill Sadick had a connection with some 'big shot' who could give us absolute protection. That Sadick was related to him by marriage and could be trusted.

"Johnson and Stickels had dropped out shortly before the boiler was taken to Tacoma although they had attended some of the meetings at the Schloss and Stickels apartments after we had decided to go to Pierce County. They did not know the location of that still, however. We kept that information from them because we thought they were dangerous."

And in this connection defendant Jauranas testified: "After the officers had followed the boiler on December 11th, we continued to look for locations for a new set up. We

kept Johnson and Stickels in ignorance of our moves because we had begun to distrust them. We finally told Johnson and Stickels and Murray that we had given up the idea of setting up as it was too hot, and finally dropped them for good in January, 1931. Afterwards, about March 25, 1931, we took the boiler to the Benston Ranch and set up the still there. * * * Johnson and Stickels never knew the location of our still at the Benston place. We purposely kept them from knowing that."

At the conclusion of the government's case, the court denied the following motion: "Defendants separately move for a directed verdict of not guilty on each and all of the counts of the indictment on the ground of insufficiency of the evidence, and upon the further ground that the defendants affirmatively withdrew from the conspiracy and disavowed the same, and upon the further ground that the acts of the defendants were involved in a conspiracy separate and apart from that involved at the still at the Benston Ranch."

Appellants here, again, earnestly insist that there were two distinct conspiracies; "that appellants had been concerned in the first, but that it had come to an end three months before the one upon which the prosecution was bottomed was formed; that the second was formed in secret from appellants, and with it they had never had any connection."

The instructions of the court are not complained of and are not in the record, and it must be assumed that the issue as to whether there existed but one continuing conspiracy, as charged in the indictment, or two distinct conspiracies, was properly submitted to the jury. The jury found that the conspiracy charged was a single continuing one; and this finding is supported by the evidence.

■■■ The gist of the conspiracy was the unlawful agreement of the parties to manufacture intoxicating liquor, and was completed when one or more of the parties committed one of the overt acts charged to effect the object of the conspiracy. The indictment charged a single continuous conspiracy. It would seem that the acts of the appellants in furthering the so-called "first conspiracy," that is, their participation in the overt acts of purchasing the still equipment, the securing of a lease of the first proposed still site on the Donkers ranch, and other acts not necessary to be set forth in detail, were sufficient to warrant a conviction. In any event, the conspiracy was a single continuous one.

set in motion by the acts of the appellants themselves. And it is clear that at no time did appellants withdraw from the unlawful agreement, nor did they attempt any affirmative act of withdrawal. On the contrary, after the abandonment of the Donkers site, they continued, or at least attempted to continue, to aid the object of the conspiracy. It is true they were "kept in the dark" as to the location of the second still site; but that fact does not excuse them. They were parties to the original conspiracy to manufacture intoxicating liquor at a place to be selected, and the abandonment of the first proposed still site and the selection of a second, though the latter place was unknown to appellants, did not constitute two distinct conspiracies, but was merely in furtherance of the original unlawful agreement to which appellants were parties, and they therefore remained liable for the acts of their coconspirators. See Coates v. United States (C. C. A.) 59 F.(2d) 173. Nor does the fact that some of the original conspirators withdrew therefrom and others entered change the legal status of those remaining. There was no error therefore in overruling appellants' motion for a directed verdict.

■■ We have treated the first assignment of error, in which appellants challenge the sufficiency of the evidence, as the equivalent of an assignment based upon the overruling of the motion for a directed verdict and as applying to counts 2, 3, and 4 as well as the conspiracy count. Said counts 2, 3, and 4, as we have seen, charged that appellants carried on the business of a distiller contrary to law, fermented mash for the distillation of spirits, and maintained a common nuisance. The evidence shows that the parties were associated together for the illegal purpose of manufacturing intoxicating liquor, and any act done by one or more of the parties to accomplish that purpose was the act of all. And this is true regardless of the fact that counts 2, 3, and 4 do not directly charge a conspiracy. 18 USCA § 550. That section is as follows: "§ 550. (Criminal Code, section 332.) 'Principals' defined. Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

The evidence is sufficient to sustain the verdict of guilty on such last mentioned counts. The fact that these appellants were not personally present at the place where and the time when the liquor was manufactured is immaterial. It is not necessary that one who

aids and abets the commission of a crime shall be present when the crime is committed to sustain a conviction under this section. The jury necessarily found against appellants' contention that they had abandoned the unlawful enterprise. Having voluntarily entered into the undertaking and aided and assisted its execution, they are responsible for the consequences.

■ Error is assigned to a ruling of the court in refusing to require the witness Jauranas to testify to whom he made a series of $2,500 payments for protection, and to a ruling permitting this witness to testify in rebuttal concerning having paid appellant Johnson $500 to fix a case for him some months prior to the conspiracy charged.

These assignments do not comply with rule 11 of this court as to the necessity of quoting the full substance of the evidence admitted or rejected. However, we have examined the assignments and do not believe that they disclose any prejudice resulting to appellants under all the circumstances of the case.

Affirmed.