91 F.2d 691 (1937)
MARINO et al.
v.
UNITED STATES.[*]
No. 8343.
Circuit Court of Appeals, Ninth Circuit.
July 28, 1937.
*692 *693 Faulkner & O'Connor, of San Francisco, Cal., for appellant John C. Marino.
Isidore B. Dockweiler and Henry I. Dockweiler, both of Los Angeles, Cal., and Albert Nelson, of San Luis Obispo, Cal., for appellant Spooner.
Otto Christensen, of Los Angeles, Cal., for appellant Antonio Gullo.
Fred A. Shaeffer, of Santa Maria, Cal., for appellant Frank Machado.
Peirson M. Hall, U. S. Atty., and Jack L. Powell, Asst. U. S. Atty., both of Los Angeles, Cal.
Before GARRECHT, DENMAN, and HANEY, Circuit Judges.
HANEY, Circuit Judge.
Forty-six defendants were indicted charging a conspiracy (18 U.S.C.A. § 88) to violate certain tariff and revenue laws of the United States. A number of defendants pleaded guilty; twelve of them were tried, of whom six were convicted; and four of the six who were convicted have appealed to this court.
The indictment charged that defendants "on or about the 1st day of August, 1934, and continuously thereafter down to and including the date of finding and presenting of this indictment * * *," which was on March 12, 1936, conspired to violate 19 U.S.C.A. § 1593(a) and (b), and 26 U.S. C.A. §§ 1152g, 1287, 1440, and 1441. The indictment charges: "That it was the purpose and object of said conspiracy and of the said conspirators and each of them, to wilfully, knowingly, unlawfully, feloniously and maliciously transport from the Republic of Mexico, and surreptitiously import, smuggle into and land in the United States alcohol and alcoholic liquors without declaring the same as required by law, and without paying the duties thereon imposed by law, and of concealing, transporting, dealing in, possessing and selling alcohol and alcoholic liquors so smuggled into the United States and having in possession, concealing and transporting alcohol and alcoholic liquors without paying the taxes imposed thereon by the Internal Revenue laws of the United States." Thereafter, the indictment sets forth nineteen overt acts, including smuggling alcohol into the United States by certain of the defendants on October 23, 1934, December 16, 1934, March 29, 1935, July 5, 1935, July 11, 1935, and October 20, 1935. Three of the overt acts were set forth as storing alcohol at certain places within the jurisdiction of the court below on October 24, 1934, December 15, 1934, and December 16, 1934. Another of the overt acts was set forth to be the sharing by appellant Marino, in the division of $1,395 on October 26, 1934. It is unnecessary to set forth other overt acts charged.
18 U.S.C.A. § 88 provides: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined."
A conspiracy is "a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means." Pettibone v. United States, 148 U.S. 197, 203, 13 S.Ct. 542, 545, 37 L.Ed 419; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 465, 41 S.Ct. 172, 176, 65 L.Ed. 349, 16 A.L.R. 196; and see United *694 States v. Hutto, 256 U.S. 524, 528, 41 S. Ct. 541, 543, 65 L.Ed. 1073, and Weniger v. United States (C.C.A. 9) 47 F.(2d) 692, 693. It is a partnership in criminal purposes.[1] The gist of the crime is the confederation or combination of minds.[2]
A conspiracy is constituted by an agreement;[3] it is, however, the result of the agreement and not the agreement itself.[4] No formal agreement between the parties is essential to the formation of the conspiracy,[5] for the agreement may be shown "if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." Fowler v. United States (C.C.A. 9) 273 F. 15, 19.
The purpose to be accomplished by the conspiracy may be either lawful or unlawful. If the purpose is lawful and is carried out by lawful means, then no offense is committed. If it is lawful and is carried out by criminal or unlawful means, then the statute is violated. Duplex Printing Press Co. v. Deering, supra, 254 U.S. 443, 465, 41 S.Ct. 172, 176, 65 L.Ed. 349, 16 A.L.R. 196; United States v. Hutto, supra, 256 U.S. 524, 528, 41 S.Ct. 541, 543, 65 L.Ed. 1073. On the other hand, if the purpose is unlawful and is carried out either by lawful or unlawful means, the statute is violated. Duplex Printing Press Co. v. Deering, supra, 254 U.S. 443, 465, 41 S.Ct. 172, 176, 65 L.Ed. 349, 16 A.L.R. 196. The purpose of the conspiracy may be continuous,[6] that is, it may contemplate commission of several offenses,[7] or overt acts.[8]
The crime is completed when an overt act effect the object of the conspiracy is done by at least one of the conspirators.[9] An overt act is something apart *695 from the conspiracy, and is "an act to effect the object of the conspiracy." Joplin Mercantile Co. v. United States, 236 U.S. 531, 535, 35 S.Ct. 291, 293, 59 L.Ed. 705. It need be neither a criminal act,[10] nor the very crime that is the object of the conspiracy.[11] It must, however, accompany or follow the agreement,[12] and must be done in furtherance of the object of it.[13]
An agreement among several accused, without commission of an overt act, is not a violation of the statute.[14] Therefore, a conspirator may avoid guilt by withdrawing from the conspiracy prior to the commission of an overt act.[15] In this connection, however, affirmative action on the part of the accused is required, to show withdrawal from the conspiracy,[16] for a conspiracy once established is presumed to continue until the contrary is established.[17] All of the conspirators need not join in the commission of an overt act,[18] for, if one of the conspirators commits an overt act, it becomes the act of all the conspirators.[19]
On the other hand, an accused must join in the agreement to be guilty of a violation of the statute,[20] for even if he commits an overt act, he does not violate the statute unless he joined in the agreement.[21]
*696 With respect to the purpose of the conspiracy, guilt is not avoided by the fact that such purpose was not accomplished.[22]
In the situation where a conspiracy has been formed, the joinder thereof by a new member does not create a new conspiracy,[23] does not change the status of the other conspirators,[24] and the new member is as guilty as though he was an original conspirator.[25] Where, after formation of a conspiracy, one of the conspirators withdraws, such withdrawal neither creates a new conspiracy, nor changes the status of the remaining members.[26]
Although participation in the agreement must be had by the accused before he can be convicted under the statute, he may be punishable as a principal, without such participation, under 18 U.S.C.A. § 550, which provides that: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." One who commits an overt act with knowledge of the conspiracy is guilty,[27] even though he is absent when the crime, which is the object of the conspiracy, is committed.[28] Such person's knowledge as to the scope of the conspiracy, may be limited,[29] and he need not know all the details of the plan or the operations.[30] Knowledge of membership in the conspiracy,[31] the part played by each of the members,[30] and the division of spoils[29] is immaterial. He must know the purpose of the conspiracy,[30] however, otherwise he is not guilty.
From the evidence we find that Hubbard and Ryan went to Ensenada, Mexico, in the summer of 1934, boarded the Yukatrivol, and talked with West, the captain, in the presence of Auldhausen about hauling alcohol. West and Hubbard talked about whether or not West owed any money to appellant Marino. Ryan and Hubbard returned to Los Angeles. During an evening shortly afterward Hubbard, Auldhausen, and Mankin talked about the alcohol business. Auldhausen quoted prices for alcohol to Hubbard.
About a week after the trip to Ensenada Hubbard went to San Francisco and talked with appellant Marino. Hubbard testified:
"I told him what had occurred down at Ensenada, that Mr. West said a boat was running again down there and he had put some money in there. First he denied it * * *
"Finally, he admitted he had the money down there and that he had been having trouble with West and didn't know whether he would be able to collect the money and how he was going to be able to get even with him at all. I told him that I would work it out * * * he said it was all right with him, he would pay me a commission on the freight money, and a commission on the $4,500 if I could be successful in collecting any of it."
Hubbard then returned to Los Angeles. About three weeks after the Ensenada trip, Hubbard had a conversation with Auldhausen and Mankin, in which it appeared that Mankin would smuggle alcohol into this country, through West, if the *697 latter bought it from Johnston, who owned a distillery in Mexico, and that "he would be interested in helping Marino to collect his money." These three then went to a hotel and joined Johnston and Harthorne. After conversing awhile, Mankin ordered 5,000 gallons of alcohol.
The next day Hubbard went to San Francisco and talked with appellant Marino. Hubbard testified that Marino said "he had a half interest in this boat [`Yukatrivol'] and wanted half of the freight money as fast as it came in." Hubbard then talked with Johnston, who was then in San Francisco. He then returned to Marino's office, and testified that Marino said: "* * * as fast as the alcohol came in he wanted his half of the freight money due on `The Yukatrivol' and wanted me to take it to him. He didn't want West to pay him anything at all. He didn't trust him with anything and I said that I would receive it just as fast as it was collected. I was to collect it from Mankin."
Hubbard then returned to Los Angeles and a day or so later had a conversation with West in the presence of Auldhausen and Harthorne at Ensenada, at which time West agreed to haul alcohol for Mankin. About a month thereafter the first shipment arrived at Ensenada, at which time "Mankin said he would make immediate arrangements for the first load on the `Yukatrivol' to be handled at the Spooner's ranch."
The boat arrived at a point off of Spooner's ranch about October 23, 1934. Hubbard, Harthorne, and another drove to an auto camp near the ranch, where Hubbard stayed, and the others went to the ranch and joined several men, including appellant Spooner. The alcohol was not unloaded that night because the sea was too rough. The next night, the alcohol was unloaded, appellant Spooner assisting.
Later, Mankin instructed Harthorne and another to store part of the alcohol at the Machado Ranch. Harthorne then testified that upon their arrival at that ranch appellant Machado refused to allow the alcohol to be stored because Mankin owed him some money. Mankin later came, paid Machado, and the alcohol was then stored in the basement.
Harthorne and Hubbard then went to San Francisco. At the latter place Hubbard received a Western Union money order for $1395.21, dated October 26, 1934, from Mankin. Hubbard took the money, paid it to Marino, and received a commission of $100. The next day Hubbard and Harthorne returned to Los Angeles.
There was some delay before the next shipment. It was partly landed at El Capitan Point and loaded on Mankin's truck on December 15, 1934. The truck was driven on the Gullo Ranch property and left there. The next day Harthorne and Mankin returned to the Gullo ranch. Harthorne testified: "* * * When I got there I saw the defendant Mr. Gullo. Mankin said, `We are waiting for Charlie' and Gullo kind of acted dumb  he had a tendency not to want to talk to us. Mankin asked him if he knew `Dago' Charlie. He didn't give us any intelligible answer so we left * * * after a lapse of an hour or so, we came back to the ranch and we found Albano, Gullo * * * Albano informed Mankin that the alcohol was all there and was ready to be re-canned. With that we left Mr. Fauzer and that drum there, and Mr. Mankin said Mr. Fauzer was going to assist in re-canning the alcohol, and then Mr. Mankin and myself left the premises. The defendant Gullo was there."
That night further unloading began, and after a short time, West became frightened because he thought he saw a Coast-Guard cutter, and he pulled out, and thinking that he was being pursued, he threw the alcohol overboard.
Hubbard testified:
"I saw Mankin later and he wanted to know what Marino was going to do about his share that had been thrown overboard * * * The next morning Mankin did talk to Marino. Marino refused to make the load good and Mankin asked why he wouldn't give us the $4,500 credit that he had down there. Marino said go ahead and pull his load out of there as soon as it came in. That was $4500 worth of alcohol and so after some delay we were notified that the other stuff was ready for delivery.
"The load was brought in and Mankin said that he couldn't pay the money until the goods were sold. I kept trying to collect the money for Mr. Marino and Mankin would pay it in $100 or two or three hundred dollars, as fast as he sold the goods. The trouble got worse and Marino came down purposely to Los Angeles to see what the matter was with his money, why he couldn't get it all."
The record does not clearly show the circumstances surrounding the "load" referred *698 to in the quoted conversation. Money orders sent to Marino by Hubbard, dated January 7, 1935, January 13, 1935, January 16, 1935, and January 21, 1935, evidently were in payment for the shipment on December 15, 1934.
Albano was arrested on March 29, 1935. The testimony shows: "That at the time Albano was driving an automobile loaded with fifty cans of alcohol and that in the car was a wet bathing suit, a very wet towel and a pair of wet tennis shoes; that the cans of alcohol had sand on them."
On October 20, 1935, Mankin and another were arrested. They had on old clothes, their trousers were rolled up above their knees, their socks were in their pockets, and their shoes were untied. One of the arresting officers went down to the beach and found a mark about four inches wide where apparently a dory had been drawn up, and a well-beaten path was there from the surf to where the car had been parked.
On December 19, 1935, Harthorne and another went to Spooner's Ranch. There was testimony as to negotiations then carried on for landing alcohol there. These negotiations were carried on with appellant Spooner. The court at the time of the admission of the testimony, instructed the jury as follows: "* * * This testimony, not being in furtherance of the conspiracy itself, gentlemen of the jury, is admissible and is received only as against the person making the statement, merely insofar as those concerned may be believed by you as an admission against interest."
Appellee introduced evidence relating to a second conspiracy commencing in September, 1935. The court instructed the jury in regard to that evidence: "You are advised, gentlemen, and the Court instructs you, that the second venture is not a part of the original enterprise described in the indictment although you may believe that the defendants Rico and Keene did all the things that the evidence charges them with, with respect to that second enterprise, and the evidence supporting that, it can not be considered by you as showing that they engaged in the enterprise described in the indictment."
Many contentions are made. Appellants contend that the evidence of the arrest of Albano on March 29, 1935, and the arrest of Mankin on October 20, 1935, was erroneously admitted. In accordance with the rules above stated this evidence was admissible against all the conspirators, as overt acts, unless Albano and Mankin withdrew from the conspiracy by affirmative action. Such affirmative action may be shown by direct or circumstantial evidence; it "might, of course, be shown by a writing, or by an express oral agreement, and we think by conduct wholly inconsistent with the theory of continuing adherence." Buhler v. United States (C.C.A. 9) 33 F.(2d) 382, 384. However, in this case there was neither direct nor circumstantial evidence of affirmative action, and therefore there was no error in the admission of such evidence.
Appellants contend that the evidence of the second conspiracy was erroneously admitted. Proof of a conspiracy may be by circumstantial evidence,[32] often times by overt acts alone,[33] in which case much is left to the discretion of the trial court.[34] In such cases great latitude is allowed,[35] and appellate courts will not reverse a case unless practical injustice has been done by the admission of irrelevant testimony.[36] In Metzler v. United States (C.C.A. 9) 64 F.(2d) 203, 206, 207, it is said: "The general rule is that, if evidence is erroneously admitted during the trial, the error of its admission is cured by its subsequent withdrawal before the close of the trial or by an instruction to the jury to disregard it."
Finally, where the proof shows two conspiracies, in each of which some of the defendants participated, but in both of which all defendants did not participate, a defendant cannot complain, if his substantial *699 rights are not affected. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L. Ed. 1314.
On the other hand, "the scope of the conspiracy must be gathered from the testimony, and not from the averments of the indictment." Terry v. United States (C.C. A. 9) 7 F.(2d) 28, 29; Ford v. United States (C.C.A. 9) 10 F.(2d) 339, 348, affirmed 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793. And further, "a conspiracy is not an omnibus charge, under which you can prove anything and everything, and convict of the sins of a lifetime." Terry v. United States (C.C.A. 9) supra, 7 F.(2d) 28, 30.
We believe the substantial rights of appellants were not affected by the admission of the evidence complained of.
The court instructed that the jury could consider whether a reward was an element influencing the testimony of witnesses, "the same as you may properly take into consideration the testimony of the defendants themselves who have as much or more at stake than anybody." Complaint is made of that part of the instruction quoted. We believe it was justified under Reagan v. United States, 157 U.S. 301, 304, 310, 15 S.Ct. 610, 39 L.Ed. 709.
The court gave an instruction regarding the weight to be given to testimony of accomplices. Following that instruction, the jury was charged with regard to the weight to be given testimony of a person convicted of a crime. In the latter instruction the court made the statement that, "A person convicted of crime is in somewhat the situation of the accomplice." Complaint is made of the quoted statement. Considering the complete instruction we believe it is apparent that a convicted person "is in somewhat the situation of an accomplice," in that the jury should examine such testimony with caution and disregard it unless it produced in the minds of the jury a positive conviction of its truth. We believe no prejudice resulted, because of the explanation given by the court.
The court also instructed the jury that if appellant Gullo "gave the use of his premises for the landing or the storage of the alcohol, he assisted in the enterprise," and that it seemed to the court that it would not be a violent inference to infer that appellant Gullo had knowledge of the conspiracy. We believe the inference is correct. It is highly improbable that Gullo could permit such use of his premises, without knowing that the men who stored the alcohol had agreed to defraud the United States. Of course the court instructed the jury that his comment on the evidence was "in no sense controlling upon" the jury.
A very similar instruction was given regarding defendant Spooner. We likewise believe it to be correct.
Finally, each of the appellants contends that there is no substantial evidence to support the verdicts. We have set forth the portion which, if believed, is pertinent. Each contends that there is no proof of knowledge.
The evidence related shows that appellant Spooner assisted in the actual unloading of the alcohol. Under the circumstances, it was a proper inference to infer that Spooner knew that there was an agreement to smuggle the alcohol into this country and thus defraud the United States.
With respect to appellant Machado, the proof showed that he helped unload the alcohol and stored it on his property. Under the circumstances, knowledge on his part could be properly inferred.
The jury could have properly inferred that appellant Marino was a principal conspirator by agreeing to the use of the boat for which he received freight tribute.
As to Gullo, the evidence is meager, though we believe sufficient. It is true that: "The failure of a person to prevent the carrying out of a conspiracy, even though he has the power so to do, will not make him guilty of the offense without further proof that he has in some affirmative way consented to be a party thereto." Weniger v. United States (C.C.A. 9) 47 F. (2d) 692, 693. But here, Gullo permitted his premises to be used for storage and the re-canning of alcohol. Such permission aided the purpose of the conspiracy, and as we have said, the jury could properly infer knowledge.
We find no error affecting the substantial rights of appellants.
Affirmed.
NOTES
[1] United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168; Coates v. United States (C.C.A. 9) 59 F.(2d) 173, 174; Craig v. United States (C.C. A. 9) 81 F.(2d) 816, 822.
[1] United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168; Coates v. United States (C.C.A. 9) 59 F.(2d) 173, 174; Craig v. United States (C.C. A. 9) 81 F.(2d) 816, 822.
[2] United States v. Hirsch, 100 U.S. 33, 34, 25 L.Ed. 539; Pettibone v. United States, 148 U.S. 197, 202, 13 S.Ct. 542, 37 L.Ed. 419; Dealy v. United States, 152 U.S. 539, 547, 14 S.Ct. 680, 38 L. Ed. 545; Bannon et al. v. United States, 156 U.S. 464, 468, 15 S.Ct. 467, 39 L. Ed. 494; Hyde v. Shine, 199 U.S. 62, 76, 25 S.Ct. 760, 50 L.Ed. 90; Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278; Brown v. Elliott, 225 U.S. 392, 401, 32 S.Ct. 812, 56 L.Ed. 1136; Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545; Proffitt v. United States (C.C.A. 9) 264 F. 299, 302; Johnson v. United States (C.C.A. 9) 62 F. (2d) 32, 34.
[3] United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168; Weniger v. United States (C.C.A. 9) 47 F. (2d) 692, 693; Craig v. United States (C.C.A. 9) 81 F.(2d) 816, 822, certiorari denied 298 U.S. 690, 56 S.Ct. 959, 80 L.Ed. 1408.
[4] United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168.
[5] Fowler v. United States (C.C.A. 9) 273 F. 15, 19; Pearlman v. United States (C.C.A. 9) 20 F.(2d) 113, certiorari denied 275 U.S. 549, 48 S.Ct. 85, 72 L. Ed. 419; Stack v. United States (C.C.A. 9) 27 F.(2d) 16, 17.
[6] United States v. Kissel, 218 U.S. 601, 608, 31 S.Ct. 124, 54 L.Ed. 1168; Hyde v. United States, 225 U.S. 347, 359, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Brown v. Elliott, 225 U.S. 392, 400, 32 S.Ct. 812, 56 L.Ed. 1136; Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793; Terry v. United States (C.C.A. 9) 7 F.(2d) 28, 29; Buhler v. United States (C.C.A. 9) 33 F.(2d) 382, 384; Johnson v. United States (C.C.A. 9) 62 F.(2d) 32, 34; Craig v. United States (C.C.A. 9) 81 F.(2d) 816, 822, certiorari denied 298 U.S. 690, 56 S.Ct. 959, 80 L.Ed. 1408.
[7] Frohwerk v. United States, 249 U.S. 204. 209, 39 S.Ct. 249, 63 L.Ed. 561; Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793; Terry v. United States (C.C.A. 9) 7 F.(2d) 28, 29.
[8] Hyde v. United States, 225 U.S. 347, 369, 32 S.Ct. 793, 56 L.Ed. 1114, Ann. Cas.1914A, 614; Ford v. United States, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793; Jones v. United States (C.C. A. 9) 162 F. 417; Jones v. United States (C.C.A. 9) 179 F. 584, 610.
[9] United States v. Hirsch, 100 U.S. 33, 34, 25 L.Ed. 539; United States v. Britton, 108 U.S. 199, 204, 2 S.Ct. 531, 27 L.Ed. 698; Pettibone v. United States, 148 U.S. 197, 202, 13 S.Ct. 542, 37 L.Ed. 419; Bannon et al. v. United States, 156 U.S. 464, 468, 15 S.Ct. 467, 39 L.Ed. 494; Hyde v. Shine, 199 U.S. 62, 76, 25 S.Ct. 760, 50 L.Ed. 90; Hyde v. United States, 225 U.S. 347, 359, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Brown v. Elliott, 225 U.S. 392, 400, 32 S.Ct. 812, 56 L.Ed. 1136; Joplin Mercantile Co. v. United States, 236 U.S. 531, 535, 536, 35 S.Ct. 291, 59 L.Ed. 705; United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211; Pierce v. United States, 252 U.S. 239, 244, 40 S.Ct. 205, 207, 64 L.Ed. 542; Jones v. United States (C.C.A. 9) 162 F. 417, 426, certiorari denied 212 U.S. 576, 29 S.Ct. 685, 53 L.Ed. 657; Jones v. United States (C.C.A. 9) 179 F. 584, 593; Weniger v. United States (C.C.A. 9) 47 F.(2d) 692, 693; Heskett v. United States (C.C.A. 9) 58 F.(2d) 897, 902, certiorari denied 287 U.S. 643, 53 S.Ct. 89, 77 L.Ed. 556; Johnson v. United States (C.C.A. 9) 62 F.(2d) 32, 34.
[10] United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211; Pierce v. United States, 252 U.S. 239, 244, 40 S.Ct. 205, 207, 64 L.Ed. 542; Heskett v. United States (C.C.A. 9) 58 F.(2d) 897, 902, certiorari denied 287 U. S. 643, 53 S.Ct. 89, 77 L.Ed. 556; Coates v. United States (C.C.A. 9) 59 F. (2d) 173, 174.
[11] United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211; Pierce v. United States, 252 U.S. 239, 244, 40 S.Ct. 205, 207, 64 L.Ed. 542.
[12] Logan v. United States, 144 U.S. 263, 308, 12 S.Ct. 617, 36 L.Ed. 429; Brown v. United States, 150 U.S. 93, 98, 14 S.Ct. 37, 37 L.Ed. 1010; United States v. Hutto, 256 U.S. 524, 528, 41 S.Ct. 541, 543, 65 L.Ed. 1073; Pearlman v. United States (C.C.A. 9) 20 F. (2d) 113, certiorari denied 275 U.S. 549, 48 S.Ct. 85, 72 L.Ed. 419.
[13] Logan v. United States, 144 U.S. 263, 308, 12 S.Ct. 617, 36 L.Ed. 429; Brown v. United States, 150 U.S. 93, 98, 14 S.Ct. 37, 37 L.Ed. 1010; Heskett v. United States (C.C.A. 9) 58 F.(2d) 897, 902, certiorari denied 287 U.S. 643, 53 S.Ct. 89, 77 L.Ed. 556.
[14] Joplin Mercantile Co. v. United States, 236 U.S. 531, 535, 35 S.Ct. 291, 59 L.Ed. 705; United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211; Pierce v. United States, 252 U.S. 239, 244, 40 S.Ct. 205, 207, 64 L. Ed. 542; Jones v. United States (C.C. A. 9) 179 F. 584, 593.
[15] United States v. Britton, 108 U.S. 199, 204, 2 S.Ct. 531, 27 L.Ed. 698; Hyde v. Shine, 199 U.S. 62, 76, 25 S.Ct. 760, 50 L.Ed. 90; Hyde v. United States, 225 U.S. 347, 359, 32 S.Ct. 793, 56 L. Ed. 1114, Ann.Cas.1914A, 614.
[16] Hyde v. United States, 225 U.S. 347, 359, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Coates v. United States (C.C.A. 9) 59 F.(2d) 173, 174.
[17] Coates v. United States (C.C.A. 9) 59 F.(2d) 173, 174.
[18] Logan v. United States, 144 U.S. 263, 308, 12 S.Ct. 617, 36 L.Ed. 429; Brown v. United States, 150 U.S. 93, 98, 14 S.Ct. 37, 37 L.Ed. 1010; Bannon et al. v. United States, 156 U.S. 464, 468, 15 S.Ct. 467, 39 L.Ed. 494; Hyde v. United States, 225 U.S. 347, 359, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Brown v. Elliott, 225 U.S. 392, 400, 32 S.Ct. 812, 56 L.Ed. 1136; Proffitt v. United States (C.C.A. 9) 264 F. 299, 302; Coates v. United States (C. C.A. 9) 59 F.(2d) 173, 174; Johnson v. United States (C.C.A. 9) 62 F.(2d) 32, 34.
[19] See note 18.
[20] Bannon et al. v. United States, 156 U.S. 464, 468, 15 S.Ct. 467, 39 L.Ed. 494; Joplin Mercantile Co. v. United States, 236 U.S. 531, 535, 35 S.Ct. 291, 59 L.Ed. 705; Terry v. United States (C.C.A. 9) 7 F.(2d) 28, 29; Weniger v. United States (C.C.A. 9) 47 F.(2d) 692; Heskett v. United States (C.C.A. 9) 58 F.(2d) 897, 902, certiorari denied 287 U.S. 643, 53 S.Ct. 89, 77 L.Ed. 556; Craig v. United States (C.C.A. 9) 81 F. (2d) 816, 822, certiorari denied 298 U.S. 690, 56 S.Ct. 959, 80 L.Ed. 1408.
[21] United States v. Hirsch, 100 U.S. 33, 34, 25 L.Ed. 539; Stack v. United States (C.C.A. 9) 27 F.(2d) 16, 17; Weniger v. United States (C.C.A. 9) 47 F. (2d) 692, 693.
[22] Williamson v. United States, 207 U. S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278; Goldman v. United States, 245 U.S. 474, 477, 38 S.Ct. 166, 62 L.Ed. 410; Heskett v. United States (C.C.A. 9) 58 F.(2d) 897, 902, certiorari denied 287 U.S. 643, 53 S.Ct. 89, 77 L.Ed. 556.
[23] Hagen v. United States (C.C.A. 9) 268 F. 344.
[24] Coates v. United States (C.C.A. 9) 59 F.(2d) 173, 174; Johnson v. United States (C.C.A. 9) 62 F.(2d) 32, 34; Craig v. United States (C.C.A. 9) 81 F.(2d) 816, 822, certiorari denied 298 U. S. 690, 56 S.Ct. 959, 80 L.Ed. 1408.
[25] Hagen v. United States (C.C.A. 9) 268 F. 344; Coates v. United States (C.C.A. 9) 59 F.(2d) 173; Metzler v. United States (C.C.A. 9) 64 F.(2d) 203, 206.
[26] Johnson v. United States (C.C.A. 9) 62 F.(2d) 32, 34; Craig v. United States (C.C.A. 9) 81 F.(2d) 816, 822, certiorari denied 298 U.S. 690, 56 S.Ct. 959, 80 L. Ed. 1408.
[27] Pattis v. United States (C.C.A. 9) 17 F.(2d) 562, 566, certiorari denied 274 U.S. 750, 47 S.Ct. 764, 71 L.Ed. 1332; Kuhn v. United States (C.C.A. 9) 26 F. (2d) 463, certiorari denied 278 U.S. 605, 49 S.Ct. 11, 73 L.Ed. 533; Weniger v. United States (C.C.A. 9) 47 F.(2d) 692, 693; Coates v. United States (C.C.A. 9) 59 F.(2d) 173, 174.
[28] Johnson v. United States (C.C.A. 9) 62 F.(2d) 32, 34.
[29] Coates v. United States (C.C.A. 9) 59 F.(2d) 173, 174.
[30] Craig v. United States (C.C.A. 9) 81 F.(2d) 816, 822, certiorari denied 298 U.S. 690, 56 S.Ct. 959, 80 L.Ed. 1408.
[31] Notes 29 and 30.
[32] Clune v. United States, 159 U.S. 590, 592, 16 S.Ct. 125, 40 L.Ed. 269; Stack v. United States (C.C.A. 9) 27 F. (2d) 16, 17; Baugh v. United States (C. C.A. 9) 27 F.(2d) 257, 259; Buhler v. United States (C.C.A. 9) 33 F.(2d) 382, 384; Coates v. United States (C.C.A. 9) 59 F.(2d) 173, 174; Metzler v. United States (C.C.A. 9) 64 F.(2d) 203, 206.
[33] Stack v. United States (C.C.A. 9) 27 F.(2d) 16, 17.
[34] Clune v. United States, 159 U.S. 590, 592, 16 S.Ct. 125, 40 L.Ed. 269; Baugh v. United States (C.C.A. 9) 27 F.(2d) 257, 259.
[35] Williamson v. United States, 207 U. S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278; Metzler v. United States (C.C.A. 9) 64 F.(2d) 203, 207.
[36] Williamson v. United States, 207 U. S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278.