**Thomas R. LILE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15808.**

United States Court of Appeals
Ninth Circuit.

Sept. 2, 1958.

Rehearing Denied Oct. 31, 1958.

Taylor & Taylor, Fairbanks, Alaska, Richard A. Haley, Hollywood, Cal., Thomas R. Lile, in pro. per., San Francisco, Cal., for appellant.

George M. Yeager, U. S. Atty., Jay A. Rabinowitz, Asst. U. S. Atty., Fairbanks, Alaska, for appellee.

Before HEALY and FEE, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES ALGER FEE, Circuit Judge.

[1] Defendant Lile was indicted with other persons for the crime of conspiracy. The charge of the indictment is set out in full as follows:

"That John David Whiles, Thomas B. Morgan, Paul Ferguson, and Joe White, also known as Thomas Robert Lile, on or about the 20th day of August, 1954, did feloniously conspire to commit an offense against the laws of the United States, to-wit, did conspire to transport, in interstate commerce, stolen property and things of the value of more than Five Thousand Dollars ($5,000.00), in violation of Section 2314 of Title 18 of the United States Code, and one or more of such defendants did, in the Fourth Judicial Division, District of Alaska, an act to effect the object of the conspiracy, to-wit, did transport from Fairbanks, Alaska, in the Fourth Judicial Division, District of Alaska, to Seattle, Washington, said stolen property and things of the value of more than Five Thousand Dollars ($5,000.00), knowing said property and things to have been stolen, in violation of Section 371 of Title 18 of the United States Code."

Defendant Ferguson entered a plea of guilty in California, pursuant to Rule 20, Federal Rules of Criminal Procedure, 18 U.S.C. Lile and Morgan went on trial in Alaska and were convicted by verdict of a jury. Judgment was entered, and a sentence of one year, together with a fine of $300 and one-half the costs of trial, was imposed upon Lile. The sentence of Lile was suspended, and he was placed on probation from the imprisonment. Motion for new trial was then denied, and Lile alone appealed.

The proof showed that Morgan, Whiles and Ferguson drove to Alaska in a car purchased by the former. Lile gave Morgan $500 at the time of the purchase and $100.00 additional to pay for the trip when the three above named drove to Yosemite Park to consult with Lile before departure for Alaska. According to the plan, to which all agreed, these three were to go to Fairbanks and acquire a pick-up truck. The government contends that the purpose of acquiring the truck was to haul back black market gold. The evidence indicates that there was a criminal purpose in the trip, which Lile knew of and to accomplish which he contributed money. However, defendants were not indicted for such a crime. The enterprise was not consummated, apparently because the three failed to acquire the pick-up truck in Fairbanks. Morgan then called up Lile and told him the pick-up truck could not be located, and the original scheme was then abandoned. Morgan and Whiles decided to return to Los Angeles. Thereafter, Ferguson, and perhaps Morgan, stole some diamond and other rings from a store in Fairbanks. The three then decided to fly with the rings to Seattle, Washington. In accordance with this design, transportation by air was obtained. The boxes in which the rings were contained were discarded and the objects were fastened on a string, which Morgan carried inside his trousers. Before they left Fairbanks, none of these three communicated to Lile either that they had stolen the rings or that they were bringing them to Seattle. While in Fairbanks, Morgan sent a telegram to Lile in San Francisco asking for $400.

The goods thus stolen were transported in interstate commerce to Seattle, and the overt act charged in the indictment was thus committed. There was the testimony of Douglas O. Maddux, owner of the jewelry store at Fairbanks, from which the rings were stolen, that the cost price was $4,300 or $5,300, and that the market value of the rings was just about double the cost and would have been in retail a good $8,000. There was some corroboration of this value in the reports which he gave to officers at the time of the robbery. There were stolen more than eighty-three individual rings,

or forty sets of rings, consisting of wedding bands, diamond engagement and dinner rings. Whiles, one of the three original conspirators, testified that in Fairbanks Ferguson called off the numbers which were written on the price tags of these rings and Whiles wrote them down. As well as he could remember, the total was $5,120 or $5,210 or $5,220. Afterward, the rings, recaptured at Los Angeles, were of a much less value than $5,000. However, it is a certainty that all the rings were not recovered, and some rings which were found with those stolen could not be identified.

From this record, the jury could have found that Morgan, Ferguson and Whiles entered into a conspiracy to transport in interstate commerce these rings, which were stolen property, and things of value of more than $5,000, and that one or more of these three committed the overt act charged and transported such property from Fairbanks to Seattle. By their verdict, the jury found all these essential elements against Morgan. And they also found each of these against Lile.

But, before these findings would permit the conviction of Lile, two other cardinal facts must have been proved. First, it must have been shown that the conspiracy continued in existence after Morgan, Whiles, Ferguson and the rings arrived in Seattle. Second, it must have been proved that, during a period while the original conspiracy was in existence, Lile became a knowing and willful participant in the original criminal combination and acted in concert with the three to accomplish the illegal design.

The proof established beyond a reasonable doubt that the three original conspirators went in an automobile from Seattle, Washington, to San Francisco, California, and then flew to Los Angeles. A number, but not all, of the rings stolen were found in the hands of one Abe Martini in Los Angeles. It may well have been found that the original criminal design encompassed the transportation of the rings to Los Angeles, from whence the three conspirators had originally set

out and where Morgan and Whiles had homes. Thus the conspiracy was proven to have existed until the arrest of Morgan on September 9, 1954, and the recapture of some of the rings on that day.

We have only then to deal with the question of the participancy of Lile at a time before the conspiracy had ended. It must, of course, be established that he had full knowledge of the criminal design and willfully acted in concert with the other three in attempting to accomplish the purposes of the combination.

There was evidence from which the jury might have found such participation by Lile. Whiles, in Seattle, saw Morgan put the stolen rings into an old plastic electric shaver box. Morgan told Whiles and Ferguson that he was going to ship this box containing the rings to Lile. During the time the three were in Seattle, Morgan called Lile and asked for $400, and told the latter jewelry had been sent to him. Before they left Seattle, Morgan received $400, which Lile had wired to him under a fictitious name.

As the three were driving out of Seattle, Morgan went into a Post Office.

About five days after they had arrived in Los Angeles, Ferguson asked Whiles to go to the home of Morgan to pick up the rings. Lile was also present when Whiles and Ferguson arrived at the home of Morgan. Lile thereupon went and got the rings and gave them to Morgan, who in turn gave them to Whiles. Whiles then took the rings to the home of Ferguson and from there Ferguson and Whiles carried the rings to Abe Martini, who was to sell the rings for the group. A letter was found by the officers in a drawer in the residence of Morgan, which Lile admitted to them he had written, with another, to his friend, Morgan, and had signed the name of Joe White to the letter. The letter was dated August 25, 1954, and refers to the financing of the Alaska trip by Lile. It was written from San Francisco and apparently received in Los Angeles. There are passages in the letter which indicate that Lile had received the rings and had them in posses-

sion and promised to bring them to Los Angeles. It also might have been inferred from the letter that Lile was taking an active part in the disposal of the rings. It is true there is an implication that Lile was attempting, in the disposal of the rings, to get back the money which Morgan owed him. But there could be little doubt in the mind of the jury, after reading the letter, that Lile knew the purposes of this interstate transportation from Seattle to Los Angeles and knew that the property had been stolen in Alaska and transported to Seattle. It could have been found that Lile was taking active measures to bring the object of the conspiracy to pass. Therefore, there is no doubt that he was an active participant in the illegal conspiracy and knowingly acted in concert with the original conspirators to further the ends of the combination.

■ The continued existence of a conspiracy may be inferred from the acts of persons, which are done in pursuance of the original criminal purpose. It is hornbook law that participation in an illegal combination need not be proven by direct evidence.[1] A person may be held as a conspirator although he joins the criminal concert at a point in time far beyond the initial act of the conspirators. If he joins later, knowing of the criminal design, and acts in concert with the original conspirators, he may be held

responsible, not only for everything which may be done thereafter, but also for everything which has been done prior to his adherence to the criminal design.[2] One need not participate in the formation of the conspiracy or even in the overt act which makes the crime complete. After a conspiracy has been formed, the adherence to the criminal design by a new confederate does not constitute a different conspiracy.[3] The original members who conceived and formulated the original design and who performed the original overt act which made it punishable are not relieved from responsibility.[4]

■ It is also well established that the person who acts in concert with the original conspirators, with knowledge of the criminal design and with a purpose to effect the objects of the conspiracy, can be held liable if he joins the conspiracy while it is still in effect and its purposes and objects have not yet been attained.[5] His knowledge as to the scope of the conspiracy, the details of the plan and the operations thereof may be limited. He need not know all of the members or the part played by them or any of them.[6]

A careful examination of the evidence and a consideration of the inferences which might be drawn therefrom establishes the proposition that there was substantial evidence to support the verdict of the jury that Lile was guilty of conspiracy.[7] No exceptions were taken to

---

1. "Proof of a conspiracy may be by circumstantial evidence * * *." Marino v. United States, 9 Cir., 91 F.2d 691, 698, 113 A.L.R. 975, certiorari denied sub nom. Gullo v. United States, 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593. "* * * a conspiracy charge may be sustained on circumstantial evidence alone." United States v. Migliorino, 3 Cir., 238 F.2d 7, 9. Blumenthal v. United States, 9 Cir., 158 F.2d 883, 889, affirmed 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154; Braverman v. United States, 6 Cir., 125 F.2d 283, 285.

2. Upon joinder of a conspiracy, "the new member is as guilty as though he was an original conspirator." Marino v. United States, 9 Cir., 91 F.2d 691, 696. "A conspirator may join at any point in the progress of the conspiracy and be held responsible for all that may be or

has been done * * *." Poliafico v. United States, 6 Cir., 237 F.2d 97, 104.

3. "* * * * where a conspiracy has been formed, the joinder thereof by a new member does not create a new conspiracy * * *." Marino v. United States, 9 Cir., 91 F.2d 691, 696.

4. Joinder of a conspiracy "does not change the status of the other conspirators * * *." Marino v. United States, 9 Cir., 91 F.2d 691, 696. Poliafico v. United States, 6 Cir., 237 F.2d 97, 104.

5. Marino v. United States, 9 Cir., 91 F.2d 691, 696.

6. Marino v. United States, 9 Cir., 91 F.2d 691, 696.

7. See Schino v. United States, 9 Cir., 209 F.2d 67, 72, certiorari denied 347 U.S.

the admission of evidence or to the instructions given by the court. An examination of the record of the trial seems to indicate that it was fair and impartial.

The judgment of conviction is affirmed.

937, 74 S.Ct. 627, 98 L.Ed. 1087; Penosi v. United States, 9 Cir., 206 F.2d 529, 530; Bateman v. United States, 9 Cir., 212 F.2d 61, 70.