Eileen Kay **THOMAS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 23348.

United States Court of Appeals Fifth Circuit.

Sept. 22, 1967.

Rehearing Denied Aug. 7, 1968.

**532**

Lawrence E. Hoffman, Harvey J. St. Jean, Miami Beach, Fla., for appellant.

Michael J. Osman, Asst. U. S. Atty., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before PHILLIPS,* COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This criminal appeal presents two questions: (1) whether an impermissible amendment to the indictment was effected by the action of the trial court in striking, on motion of the government, portions of Count One, and in dismissing Count Three of the Indictment; and (2) whether the verdict of guilty is supported by the evidence.

The Indictment returned October 21, 1965, charged appellant Eileen Kay Thomas, and two other defendants, William John Tehoy, III, and Paul Willoughby Granville, in Count One with conspiracy under Title 18, U.S.C. Sec. 371, to violate the Bank Robbery statutes of the United States, Title 18, U.S.C. Secs. 2113 (a) and 2113(d), and the "aider and abettor" statute, Title 18 U.S.C. Sec. 2. Count Two charged substantive violation of Title 18, U.S.C. Secs. 2113(a) and Title 18, U.S.C. Sec. 2, by the same three persons. Count Three charged substantive violation of Title 18, U.S.C. Sec. 2113 (d) and Title 18, U.S.C. Sec. 2, again naming the same three persons (Tehoy, Thomas and Granville) as defendants. The Indictment is set out in the margin.[1]

* Of the Tenth Circuit, sitting by designation.

1. The Grand Jury Charges:
Count One.
That beginning on or about June 15, 1965, and continuing until on or about June 19, 1965, in Miami, Florida, in the Southern District of Florida, the defendants, William John Tehoy, III, Eileen Kay Thomas and Paul Willoughby Granville, did unlawfully, wilfully, knowingly, feloniously and fraudulently combine, conspire, confederate, agree and have a tacit understanding with each other to commit offenses against the United States of America, to-wit:

1. To, by force and violence, and by intimidation, take from the person and presence of Richard P. Dillman, teller, money, to-wit, $8,050.00, which then and there belonged to, and was in the care, custody, control, management and possession of Fidelity National Bank of South Miami, which was then and there insured by the Federal Deposit Insurance Corporation certificate number 19040 dated February 20, 1964; in violation of Title 18, United States Code, Section 2113(a) and Title 18, United States Code, Section 2.

2. In committing the acts alleged in the paragraph above, did unlawfully and

On November 5, 1965, appellant entered her plea of not guilty to all counts. On the morning of the trial, December 7, 1965, the trial judge granted the government's oral motion to strike Paragraph 2, and overt acts 6, 7 and 8 from Count One, the conspiracy count, and to dismiss Count Three as to all defendants.[2]

wilfully place the life of Richard D. Dillman, teller, and the lives of other employees and customers present in said bank, in jeopardy by the use of a dangerous device, to-wit, a bomb; in violation of Title 18, United States Code, Section 2113(d) and Title 18, United States Code, Section 2.

And that the defendants in furtherance of said conspiracy and to effectuate the objects and purposes thereof, did commit, and cause to be committed, the following overt acts, in the Southern District of Florida:

1. On June 18, 1965, William John Tehoy, III and Eileen Kay Thomas did drive to the vicinity of S. W. 87th Avenue and Bird Road, Miami, Dade County, Florida.

2. On June 18, 1965, Paul Willoughby Granville did meet William John Tehoy, III and Eileen Kay Thomas in the vicinity of S. W. 87th Avenue and Bird Road, Miami, Dade County, Florida.

3. On June 18, 1965, Paul Willoughby Granville did drive from the vicinity of S. W. 87th Avenue and Bird Road, Miami, Dade County, Florida, to S. W. 59th Avenue and the vicinity of Bird Road, Miami, Dade County, Florida.

4. On June 18, 1965, William John Tehoy, III and Eileen Kay Thomas did drive from the vicinity of S. W. 87th Avenue and Bird Road, Miami, Dade County, Florida to S. W. 59th Avenue and the vicinity of Bird Road, Miami, Dade County, Florida.

5. On June 18, 1965, Paul Willoughby Granville did meet William John Tehoy, III and Eileen Kay Thomas on S. W. 59th Avenue, in the vicinity of Bird Road, Miami, Dade County, Florida.

6. On June 18, 1965, Paul Willoughby Granville did enter the Fidelity National Bank of South Miami, 5880 Bird Road, Miami, Dade County, Florida.

7. On June 18, 1965, at S. W. 59th Avenue, in the vicinity of Bird Road, Miami, Dade County, Florida, Paul Willoughby Granville did give an envelope to Eileen Kay Thomas.

8. On June 18, 1965, Eileen Kay Thomas did enter the Fidelity National Bank of South Miami, 5880 Bird Road, Miami, Dade County, Florida;

all in violation of Title 18, United States Code, Section 371.

**Count Two.**

That on or about June 18, 1965, in Miami, Florida, in the Southern District of Florida, the defendants, William John Tehoy, III, Eileen Kay Thomas and Paul Willoughby Granville did by force and intimidation take from Richard P. Dillman, teller, Fidelity National Bank of South Miami, a sum of money in the approximate amount of $8,050.00, which then and there belonged to and was in the care, custody, control and possession of the said Fidelity National Bank of South Miami, the accounts of which said bank were then and there insured by the Federal Deposit Insurance Corporation under certificate number 19040 dated February 20, 1964; in violation of Title 18, United States Code, Section 2113(a) and Title 18, United States Code, Section 2.

**Count Three.**
**I.**

The Grand Jury realleges all of the allegations of Count Two of this indictment.

**II.**

That on or about June 18, 1965, in Miami, Florida, in the Southern District of Florida, the defendants, William John Tehoy, III, Eileen Kay Thomas and Paul Willoughby Granville, in committing the act alleged in Count Two of this indictment, did unlawfully and wilfully place the life of Richard P. Dillman, teller, Fidelity National Bank of South Miami, and the lives of other employees and customers present in said bank, in jeopardy by the use of a dangerous device, to-wit a bomb; in violation of Title 18, United States Code, Section 2113(d) and Title 18, United States Code, Section 2.

2. We cannot find the rulings in the record, although the Stipulation Designating Record on Appeal contains the following designations:

"11. Government's oral motion to strike paragraph 2 of Count 1—Granted December 7, 1965.

12. Government's oral motion to strike Overt Acts 6, 7 and 8—Granted December 7, 1965.

13. Government's oral motion to dismiss Count 3 as to each defendant—Granted December 7, 1965.

14. Formal Order to enter dated December 7, 1965."

Inasmuch as the briefs of both parties on appeal agree on what occurred, we

Tehoy was permitted to withdraw his plea of not guilty to Count One and enter a plea of guilty to that count. The case proceeded to trial against appellant and Granville upon Counts One and Two. Tehoy was the government's principal witness. The jury returned verdicts of guilty against both remaining defendants under Counts One and Two. Motions for Judgment of Acquittal as to appellant were denied at the close of the government's case in chief and at the close of all the evidence, and Motion for Judgment N.O.V. and in the alternative for New Trial was denied after verdict. Miss Thomas was sentenced under the provisions of Title 18, U.S.C. Sec. 4208(b),[3] and this appeal timely followed. In view of the second question raised here, supra, the facts must be related in considerable detail.

Stated most favorably to the government, the evidence at trial revealed the following facts: appellant, a twenty-four year old unmarried student at the University of Miami lived alone in a 6-room apartment. She met her co-defendant Tehoy in late August 1964 and saw him frequently thereafter. He was a single student at the same institution, about twenty years old. Five to seven weeks after their meeting appellant introduced Tehoy to Granville. Granville was twenty-nine, married and the father of four small children. He was self-employed in sales work. On occasion, Tehoy would go to appellant's apartment and meet appellant and Granville. On one visit to the apartment, appellant asked Tehoy if he was interested in a job. About June 1, 1966, at appellant's apartment, Granville offered Tehoy a job picking up "packages" two or three times a week for which Tehoy was to earn about $1000. The contents of such packages were not discussed, nor was the time or place of pickup or delivery points mentioned. In a later conversation in appellant's presence he was told by Granville: "The less you know about it the better. You just don't know what's in the packages. You're just delivering them and dropping them off and that's it." At another time in appellant's presence Granville related to Tehoy that he had friends who were "scouting out bank tellers who were embezzling funds and that they were going to get a setup where they could go in and rob the bank and leave, and then after they had made a successful getaway, the banker would sound an alarm." The banker would report more money taken than was actually the case so as to cover his embezzling. Granville never mentioned a particular bank, merely said he was working on this. After Granville left, Tehoy told appellant this sounded sort of weird, and like it was imagination, that it was a silly fairy tale, that it didn't sound real. Appellant replied that Paul

feel justified in assuming that this action was taken without requiring further verification.

We do not mean thereby to condone the failure to include these portions in the printed Record and the failure of counsel to discharge their responsibility to this Court to check the Record against the Joint Designation. Appellate counsel should be aware that court reporters and deputy clerks err occasionally, in Kipling's words, "Even as you and I".

3. (b) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (c) hereof. The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnised to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiving such reports and recommendations, the court may in its discretion: (1) Place the prisoner on probation as authorized by section 3651 of this title, or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run from date of original commitment under this section.

(Granville) was in business and knew what he was doing. In discussing the package pickup question with Tehoy appellant told him that if they ever ran into any trouble, that all they had to say was that some Cuban gave them the packages, and promised them a certain amount of money; that they didn't know what was in the packages and didn't really know anything about it; just some man they met, say, at a frequent spot such as the Ale House, met them in a parking lot and asked if they would deliver the packages. No "package" business developed.

On June 17, 1966, Granville told Tehoy, appellant and one Paul Back to meet at appellant's apartment the following day, June 18, at 9:00 A.M. and wait until he called to give directions concerning a "job". These instructions were followed (Back brought a girl friend along) and about 11:00 A.M. Granville telephoned and talked to appellant. The group proceeded to Cutler Ridge Shopping Center and waited until 3:00 P.M. but did not meet Granville. The party then returned to appellant's apartment. En route appellant told Tehoy that they "were there in connection with something to do with the bank at Cutler Ridge."[4] At about 3:30 P.M. Granville appeared at appellant's apartment and inquired why they had not shown up at Cutler Ridge. The group, in turn, wanted to know where he was and why he had not shown up. Granville then made a telephone call to an unidentified person and started complaining about the failure to meet. After the phone call the person who had driven Granville to the apartment left, and Back and his girl friend also left. Tehoy, the appellant and Granville remained. There was further discussion about the failure

to make connections at Cutler Ridge. Tehoy drove Granville home and after stopping at his own apartment returned to the appellant's apartment. Appellant received a phone call and thereafter Tehoy drove to the shopping center at Bird Road and 87th Avenue, where they met Granville. On his instructions, appellant and Tehoy followed him to the Fidelity National Bank of South Miami. Granville went toward the bank and returned to Tehoy's car in about five minutes. At that time Granville dropped an envelope in Tehoy's lap and told him to deliver the note to a Mr. Dillman, a teller at the bank. He described Dillman and told Tehoy the side of the bank where he was located and said: "I'll meet you in a half an hour at Hot Shoppes on U.S. 1". Granville left. Tehoy left the appellant seated in his car, with the motor running, about a hundred feet from the bank entrance, and proceeded into the bank and presented the envelope to Dillman at his teller's cage. The envelope contained a note which stated: "Give this boy your bank. We have a bomb set to go in one minute if you don't. All bills and five minutes start." The note, as stipulated at the trial by Granville's attorney and further as established by expert testimony, was in Granville's handwriting.[5]

After receiving the note, Dillman filled a bag with $8,050.00 and handed it to Tehoy. Tehoy left the teller's cage with the bag of money and was apprehended by a bank guard, Matthew Jones, outside the door of the bank. Jones took Tehoy back inside the bank and the South Miami Police were summoned. The call went out at 7:18 P.M. Three squad cars of Police arrived a few minutes later. About five minutes after the Police ar-

---

4. This is not the location nor the bank identified in the Indictment, Fidelity National Bank of South Miami, which is at 5880 Bird Road near S. W. 59th Avenue.

5. In his defense testimony Granville accounted for the note being in his handwriting by relating a discussion with Tehoy concerning hypothetical bank robberies, the methods used therein, and the

writing out of about ten different sample robbery notes by himself and by Tehoy. This occasion Granville said was about a month prior to June 18, the date of the robbery. He denied meeting Tehoy at 87th Avenue and Bird Road and giving him the note at that time. He, his wife, and his mother all testified that he did not leave the house that evening after about 6:30 when Tehoy drove him there.

rived, one of them, Officer Puckett, went to Tehoy's car, still parked some one hundred feet from the bank entrance with the motor running and the appellant seated in the front seat on the passenger's side. Puckett asked appellant who she was with; she replied: "A man", and stated that he was in the bank. She wanted to know what this was all about and Puckett told her that she would be informed later in the bank and that she would have to come in the bank with him, which she did. At the time he walked up to the car Puckett was in full police uniform, wearing his police revolver. Miss Thomas made no attempt to leave. During the five minute interval between the arrival of the Police and Officer Puckett's approach to appellant two of the Police cars were at the front door of the bank in appellant's range of vision.

Government witness Conners, a Special Agent of the F.B.I., questioned appellant in the bank. She told Conners that about 6:30 that evening she and Tehoy drove to a parking lot at 87th Avenue and Bird Road and that Tehoy parked the car and went to another car where he talked with a Cuban looking man. She said that when Tehoy returned to his car he was putting a white piece of paper in his back pocket, and that she and Tehoy then proceeded to the bank in Tehoy's car.

Shortly after midnight the F.B.I. agents on the scene transferred Tehoy and the appellant to the Dade County Jail. An hour or so later Tehoy was taken from his cell to the corridor outside appellant's cell and they engaged in a discussion in the presence of another F.B.I. Special Agent as to who was telling the truth and whether their "stories" should be changed. Appellant stated that she was sticking to her story.[6]

As indicated, this statement of facts is that most favorable to the government, proved in all essential particulars by Tehoy's testimony. Tehoy's trial account was to an extent impeached by a statement he gave to Agents Conners and Brandes at the bank immediately after the robbery.[7] Tehoy's testimony was further to the effect that he did not know what was in the note he took into the bank, that he had no intention of participating in a robbery, that he was surprised when the bag of money was handed to him, that he took it and walked away as a "motor response", and that his only reason for having appellant with him on the evening of the robbery was to have a last date together prior to his emplaning for his Michigan home later that evening. He also testified that the reason he left his car engine running at the bank was that he had been having trouble earlier starting the car, and that when he left appellant's apartment he had to have the car pushed by a neighbor in order to start it. In each of its most damaging aspects Tehoy's testimony was denied by appellant and by Granville.[8]

### I.

The first point argued by appellant on appeal is stated in her brief as follows: "The unauthorized amendment of the Indictment by the trial court will not support a conviction." This refers to the action of the trial court[9] on the day of trial and just prior thereto in granting the government's motion to strike the

6. The agent who heard this coversation, Mr. Brandes, did not make a written memorandum of it. His account of the conversation varied somewhat between direct and cross-examination. The text (above) is an attempt to summarize both accounts.

7. For instance, in the earlier statement he said he was given the sealed note at 87th Avenue and Bird Road and paid $15.00 to deliver it by a stranger who came up to him and accosted him there.

8. For instance, the appellant testified that on the evening of June 18 the call from Granville on the telephone was for Tehoy and that Tehoy spoke with him. She did not speak other than to answer and hand the phone to Tehoy. She testified that after speaking on the phone Tehoy asked her to make a note of the 87th Avenue S.W. and Bird Road address, which she did, after which they went there.

9. See footnote [2] supra and supporting text.

second paragraph of Count One, as well as overt acts 6, 7 and 8 thereof, and to dismiss Count Three. The appellant on brief does not argue that it was improper to dismiss Count Three on the government's motion. Such an argument would, of course, be frivolous. The right of the prosecution to move for and the court to grant dismissal of an Indictment or separate counts thereof is a hornbook principle.[10]

The striking of paragraph 2 of Count One charging that one of the objects of the conspiracy was to place human lives in danger by the use of a bomb in violation of Title 18, U.S.C. Sec. 2113(d) and the striking of overt acts 6, 7 and 8, on the other hand, raise a question of more serious import. Overt act 6 charged that Granville entered the bank on June 18. Overt act 7 charged that on June 18 at S.W. 59th Avenue in the vicinity of Bird Road (the location of the bank) Granville gave an envelope to the appellant. Overt act 8 charged that on the same date the appellant entered the Fidelity National Bank of South Miami, 5880 Bird Road. Thus, says appellant, the Indictment on which appellant was forced to go to trial differed from that returned by the Grand Jury in crucial respects: (a) one of the alleged objects of the conspiracy was eliminated, and (b) the three overt acts coming closest to charging the appellant with actual participation in the substantive offense were also eliminated.

The argument goes on that these were allegations which the appellant had to prepare her defense to meet, and, of critical importance, they were allegations the Grand Jury thought it necessary to include when it voted a true bill against the appellant for conspiracy.

In a word, was Miss Thomas, in violation of her constitutional right to be tried only upon Grand Jury indictment, tried instead on a charge drawn by court and prosecutor?

The principle relied on is well established by precedent. It was first clearly enunciated for federal courts in Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. The indictment there charged violation of former Section 5209 of The Revised Statutes of the United States by the making of false entries in bank records with intent to deceive "the Comptroller of the Currency and the agent appointed to examine the affairs" of the bank. The indictment was demurred to, and at the demurrer hearing, upon the prosecutor's motion, the underscored words (supra) were ordered stricken from the indictment as surplusage. Bain was convicted and sentenced upon the indictment as so altered. He exhausted appellate procedures and the case was heard by the Supreme Court on petition for writ of habeas corpus. That Court granted the writ and discharged the prisoner.

In doing so it reviewed the English common law and pointed out that the decisions proscribing amendments to indictments were reenforced by the Fifth Amendment requirement that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury". The Court said (at page 10 of 121 U.S. at page 786 of 7 S.Ct.):

"While it may seem to the court, with its better instructed mind in regard to what the statute requires to be found as to the intent to deceive, that it was neither necessary nor reasonable that the grand jury should attach importance to the fact that it was the comptroller who was to be deceived, yet it is not impossible nor very improbable that the grand jury looked mainly to that officer as the party whom the prisoner intended to deceive by a report which was made upon his requisition and returned directly to him. As we have already seen, the statute, re-

10. "Each count is, in legal contemplation, a separate indictment and must contain all the averments necessary to constitute the offense sought to be charged in such

count." Wharton's Criminal Law and Procedure, Vol. 5, Sec. 1934, Joinder of Offenses in Separate Counts, page 35.

quires these reports to be made to the comptroller at least five times a year, and the averment of the indictment is that this report was made and returned to that officer in response to his requisition for it. How can the court say that there may not have been more than one of the jurors who found this indictment who was satisfied that the false report was made to deceive the comptroller, but was not convinced that it was made to deceive anybody else? And how can it be said that, with these words stricken out, it is the indictment which was found by the grand jury? If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed."

And further (at page 13 of 121 U.S., at page 787 of 7 S.Ct.):

"It only remains to consider whether this change in the indictment deprived the court of the power of proceeding to try the petitioner and sentence him to the imprisonment provided for in the statute. We have no difficulty in holding that the indictment on which he was tried was no indictment of a grand jury. The decisions which we have already referred to, as well as sound principle, require us to hold that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists. It is of no avail under such circumstances, to say that the court still has jurisdiction of the person and of the crime, for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the constitution, can be 'held to answer,' he is then entitled to be discharged so far as the offense originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a nolle prosequi had been entered. There was nothing before the court on which it could hear evidence or pronounce sentence."

Although the question was not directly involved in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240, the principle is well stated there as follows:

"This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849; United States v. Norris, 281 U. S. 619, 50 S.Ct. 424, 74 L.Ed. 1076; Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. (Quoting Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849). We reaffirmed this rule only recently, pointing out that 'The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses

charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.' Stirone v. United States, supra, 361 U.S. at 218, 80 S.Ct. at 273."

■ The principle then, is of undeniable present vitality and force, and must receive our earnest consideration. here. Our question is, does what occurred below require its application in this case? We conclude that our answer should be in the negative.

The situation here is more nearly that involved in Salinger v. United States, 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed. 398. The indictment there was for using the mails to defraud, alleging several schemes to carry out the unlawful purpose. Before the case was submitted to the jury, the trial court granted a defense request to withdraw from jury consideration all but one of the alleged plans or schemes. The Court said (at Pages 548, 549 of 272 U.S. at page 175 of 47 S.Ct.):

"The contention that the court, by withdrawing from the jury a part of the charge as without support in the evidence, amended the indictment and thereby prevented it from longer serving as an accusation by a grand jury is on no better plane than the others. The indictment was not amended, either actually or in legal effect. It remained just as it was returned by the grand jury, and the trial was on the charge preferred in it and not on a modified charge. After the evidence was put in, the accused, believing that part of the charge had no support in the evidence, requested that that part be withdrawn from the jury; and the court acceded to the request when the final instructions were given. The scheme to defraud as set forth in the indictment was manifold in that it comprehended several relatively distinct plans for fleecing intended victims. What the court withdrew from the jury was all of these plans but one. Thus the court ruled that the evidence while tending to sustain the charge as respects one of the plans did not give it any support as respects the others.

Whether this was right or wrong—as to which we intimate no opinion—it did not work an amendment of the indictment and was not even remotely an infraction of the constitutional provision that 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury.' Amendment 5. Goto v. Lane, 265 U.S. 393, 44 S.Ct. 525, 68 L.Ed. 1070; State v. Evans, 40 La.Ann. 216, 218, 3 So. 838. And see Crain v. United States, 162 U.S. 625, 636, 16 S.Ct. 952, 40 L.Ed. 1097; Hall v. United States, 168 U.S. 632, 638–639, 18 S.Ct. 237, 42 L.Ed. 607. In the case of Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849, on which the accused relies, there was an actual amendment or alteration of the indictment to avoid an adverse ruling on demurrer, and the trial was on the amended charge without a resubmission to a grand jury. The principle on which the decision proceeded is not broader than the situation to which it was applied."

Here, as in *Salinger* the effect of the Court's action was to narrow, not widen the issues the defendant was called on to meet. It can hardly be doubted that if, instead of moving to strike Paragraph 2 and overt acts 6, 7 and 8, the U. S. Attorney, after his proof was in, had suggested to the Court that he had offered no proof as to these matters, and the jury should be so instructed, the following of this suggestion by the Court would have been clearly permissible. The net effect is the same, in our judgment.

Our views are reinforced and strengthened by our own case of Overstreet v. United States, 5 Cir., 321 F.2d 459 (1963). There a single count charged a single conspiracy to violate two marijuana conspiracy statutes, Title 21, U.S. C. Sec. 176a, carrying a minimum five-year and a maximum twenty-year sentence, and Title 26 U.S.C. Sec. 4744(a), carrying a minimum jail sentence of two years and a maximum of ten years. Upon conviction, Overstreet received a twenty-year confinement sentence.

In an apparent attempt to avoid the problem presented in Williams v. United States,[11] 5 Cir. 1956, 238 F.2d 215, the U. S. Attorney, before trial, moved to "sever from this trial" the portion of the count which referred to Title 26, U.S.C. Sec. 4744, and the motion was granted. This Court said (at Page 461 of 321 F.2d):

"It is clear that an indictment may not be amended except by resubmission to the grand jury. Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). But the Supreme Court has held that withdrawing a part of a charge from the consideration of the jury does not work an amendment of the indictment, Salinger v. United States, 272 U.S. 542, 548–549, 47 S.Ct. 173, 71 L.Ed. 398 (1962), provided nothing is thereby added to the indictment. See United States v. Norris, 281 U.S. 619, 622, 50 S.Ct. 424, 74 L.Ed. 1076 (1930); United States v. Ballard, 322 U.S. 78, 88, 90–91, 64 S.Ct. 882, 88 L.Ed. 1148 (1944) (Stone, C. J., dissenting). The 'severance' which occurred in this case was not an amendment which added any charges to the indictment and was therefore proper."

Circuit Judge (now Chief Judge) Brown vigorously dissented from the majority holding in Overstreet, on the basis of unwarranted amendment of the indictment, concluding:

"The vital function of the Grand Jury ought not to be whittled down to extricate prosecutors from the consequences of slovenly draftsmanship." (321 F.2d at page 463).

■ Overstreet, despite Judge Brown's dissent, stands as the law of this Circuit. We think that Overstreet presented a much stronger case of prejudice to the rights of the defendant than does the case sub judice. On a fortiori grounds, therefore, we refuse to hold that the striking of portions of the indictment here constituted an encroachment upon the principles announced in Ex parte Bain (supra).

II.

We consider now, the sufficiency of the evidence (a) as to Count One, the conspiracy count and (b) as to Count Two, the substantive count under Title 18, U.S.C. Sec. 2113(a).

■ Based on the lengthy recital of the evidence in the introductory portion of this opinion, we are of the view that the jury was warranted in returning a verdict of guilty as to Count One. True, the main government witness, Tehoy testified that he did not know he was robbing a bank, but we think the jury was entitled to conclude that both defendants on trial, Granville and appellant, planned and knew what was taking place and that Tehoy was their dupe. This, with proof of one or more of the overt acts left in the indictment, (and there was competent proof as to each of overt acts 1, 2, 3, 4 and 5) was sufficient. The conviction under Count One is affirmed.

■ As to the conviction under Count Two, the matter stands differently. No more than mere presence plus guilty knowledge on the part of appellant is shown as to the actual bank robbery. No active participation therein or even encouragement thereof on her part is shown by the testimony of any witness. Tehoy, the principal witness for the government, said she was present because he was having a last date with her. He disclaimed

11. Williams involved a charge of conspiracy under Title 18, U.S.C. Sec. 371, to violate seven distinct provisions of the liquor laws, of which, as substantive offenses, six would be felonies and one a misdemeanor. Williams was convicted and was sentenced to three years, as for conspiracy to commit a felony. This Court refused to disturb the judgment and sentence since the question of ambiguity was not brought to the trial court's attention by request for special verdict, by motion to dismiss or otherwise. Nevertheless we indicated that better practice, so as to avoid ambiguity as to jeopardy, would be to list all felony objects and all misdemeanor objects in separate conspiracy counts.

knowledge that a bank was to be robbed and related no act or word of the appellant to aid or abet in any way the commission of the substantive offense. It follows that Miss Thomas' conviction under Count Two should have been set aside and her Motion for Judgment N.O.V. granted.[12] Upon remand, the court below is directed to set aside her conviction under Count Two and dismiss that count as to appellant.

Affirmed in part; reversed in part.

### ORDER DENYING PETITION FOR REHEARING

#### PER CURIAM:

Following the rendition of this Court's opinion on September 22, 1967, the appellee, United States of America, filed its petition for rehearing in this cause as it pertains to Count Two of the indictment. The conviction of the appellant under Count Two of the indictment was reversed in this Court's opinion (see page 540 F.2d).

The theory of the petition for rehearing is based on Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), to the effect that a party to a conspiracy is liable as a principal for substantive offenses committed in furtherance of the conspiracy while such party is a member of the conspiracy. This Court applied the Pinkerton principle in its opinion in Gradsky v. United States (5 Cir., 1967), 376 F.2d 993.

The Supreme Court stated in Pinkerton, 328 U.S. 640, at 647, 66 S.Ct. 1180, at 1184:

" * * * so long as the partnership in crime continues, the partners act for each other in carrying it forward. * * * The governing principle is the same when the substantive offense is committed by one of the conspirators in furtherance of the unlawful project. Johnson v. United States, 9 Cir., 62 F.2d 32, 34. The criminal intent to

do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all. An overt act is an essential ingredient of the crime of conspiracy under § 37 of the Criminal Code, 18 U.S.C.A. § 88 [7 F.C.A. title 18, § 88]. If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense."

The Pinkerton case was not called to the attention of the trial court and no instructions based on it were given to the jury. It was not relied upon by the government in its original brief in this case.

It should be emphasized that our original opinion sustained the sufficiency of the evidence to support conviction as to Count One only upon the following theory (page 540 F.2d):

"Based on the lengthy recital of the evidence in the introductory portion of this opinion, we are of the view that the jury was warranted in returning a verdict of guilty as to Count One. True, the main government witness, Tehoy testified that he did not know he was robbing a bank, but we think the jury was entitled to conclude that both defendants on trial, Granville and appellant, planned and knew what was taking place and that Tehoy was their dupe. This, with proof of one or more of the overt acts left in the indictment,

12. Williams v. United States, 361 F.2d 280, 5 Cir. 1966; Spencer v. United States, 295 F.2d 536, 5 Cir. 1961; Mc-

Clain v. United States, 224 F.2d 522, 5 Cir. 1955.

(and there was competent proof as to each of overt acts 1, 2, 3, 4 and 5) was sufficient. The conviction under Count One is affirmed."

 This was tantamount to saying that the jury (in the light of Tehoy's unequivocal testimony that he had no knowledge of any conspiracy) had no evidence before it upon which to reach a conclusion that Tehoy was a member of the conspiracy. It follows that in entering the bank and presenting the holdup note he was not acting in furtherance of the conspiracy. The conviction of Miss Thomas therefore may not be permitted to stand on the basis of her membership in the conspiracy and action by Tehoy *as a member of* and in furtherance of the conspiracy. *Pinkerton,* supra, is inapplicable to the case before us in the light of the peculiar factual situation here present.

■ Assuming nevertheless that *Pinkerton* would be applicable, the conviction under Count Two would still have to be set aside for the reason that the theory of *Pinkerton* was not submitted to the jury by the court's instructions. See Nye & Nissen v. United States, 336 U.S. 613, 618, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949) where the Court referred to *Pinkerton* as holding:

"that a conspirator could be held guilty of the substantive offense even though he did no more than join the conspiracy, provided that the substantive offense was committed in furtherance of the conspiracy and as a part of it. *A verdict on that theory requires submission of those fact issues to the jury.* That was not done here. Hence Moncharsh argues that he is entitled to a new trial." (Emphasis supplied)

The court avoided granting a new trial in *Nye & Nissen* for failure to charge on the principles laid down in *Pinkerton* because there the jury was given an aider and abettor charge, and the court was of the view that there was ample evidence to support conviction under the aider and abettor charge. But here, as we stated at page 540 F.2d, no aiding and abetting of Tehoy by Miss Thomas took place. We said:

"No more than mere presence plus guilty knowledge on the part of appellant is shown as to the actual bank robbery. No active participation therein or even encouragement thereof on her part is shown by the testimony of any witness."

It is thus clear that our original holding that the conviction under Count Two should be set aside must also stand upon this alternative theory.

The petition for rehearing is ordered denied.