UNITED STATES of America,
Appellee,

v.

Thomas CANTONE and Irwin Rosen,
Appellants.

Nos. 501, 502, Dockets 32684, 32685.

United States Court of Appeals,
Second Circuit.

Argued Jan. 23, 1970.

Decided May 8, 1970.

Theodore Krieger, New York City (Albert J. Krieger, New York City, on the brief), for appellant Cantone.

Phylis Skloot Bamberger, New York City (Milton Adler, The Legal Aid Society, New York City, on the brief), for appellant Rosen.

John W. Nields, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, William B. Gray, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

Thomas Cantone and Irwin Rosen appeal from judgments of conviction entered after a jury trial in the United States District Court for the Southern District of New York on an indictment charging them, together with others not named as defendants, with violating 18 U.S.C. § 371 (1964) and 26 U.S.C. § 7206 (2) (1964) [1] by conspiring to defraud the United States in the ascertainment and collection of information used by the Internal Revenue Service in determining the tax liability of appellants and others; and with one substantive count [2] of aiding in the preparation of a false internal revenue form in violation of 26 U.S.C. § 7206(2) (1964). Both appellants were sentenced to one year and one day's imprisonment on each count, the sentences to run concurrently.

**I.**

Evidence was introduced to show that in 1964 a system of pari-mutuel betting known as the "twin double" came into use at various race tracks including the Yonkers and Roosevelt Raceways in New York. At these tracks the bettor of a twin double purchases a ticket for horses in the sixth and seventh races. If both horses win, he exchanges this ticket for one with his choice of horses in the eighth and ninth races. If the horses selected on this latter ticket are also winners, the bettor has a winning twin double ticket. Such a ticket usually entitles its holder to a substantial payoff. Until January 1966 cash was paid for winning twin double tickets. Since then Roosevelt Raceway has paid by check for all tickets worth over $5,000.

Of course gambling winnings constitute taxable income. Upon payment of winnings in excess of $600 race tracks are required [3] to prepare a form which includes the name, address and signature of the payee. From this form the race track prepares and files Internal Revenue Service Information Form 1099 the purpose of which is to assure that winnings will be included in the winner's income tax return.

The government sought to prove that appellants participated in a conspiracy to procure persons who would, for a commission, cash their winning twin double tickets for them, thus enabling appellants to avoid tax liability for the amounts won.

Appellants were also charged with a substantive count of aiding in the preparation of a false 1099 form with respect to a $4,196.50 ticket cashed on July 28, 1964.

1. 26 U.S.C. § 7206(2) provides:
   "§ 7206. Fraud and false statements.
   "Any person who—
   \* \* \* \* \*
   "(2) Aid or assistance.
   "Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; \* \* \* shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

2. Three other substantive counts were severed and ultimately dismissed.

3. See 26 U.S.C. § 6041(a), (d) (1964).

## II.

### Rosen's Appeal

The appellants were convicted of aiding in the preparation of a fraudulent 1099 form which concealed the real name of the winner on a July 28, 1964, twin double ticket worth $4,196.50. Rosen argues that his conviction on this count must be reversed, since the evidence failed to show that he had any connection with the transaction on which the count was based.

Because of the absence of direct proof of Rosen's participation in the July 28th transaction, the government based its case against Rosen on this count on the doctrine of Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In *Pinkerton* no evidence was introduced to show that one of the defendants participated directly in the commission of the substantive offenses of which he was convicted. However, the Court ruled that the defendant could be found guilty of the substantive crimes:

"if it was found *at the time those offenses were committed petitioners were parties to an unlawful conspiracy* and the substantive offenses charged were in fact committed in furtherance of it." *Id.* at 645, 66 S.Ct. at 1183 (emphasis added.)

*Pinkerton* holds and the trial court charged[4] that for the doctrine to be applicable the jury had to find beyond a reasonable doubt that the substantive crime was committed, that it was in furtherance of the conspiracy, and that at the time the act was committed appellant was a member of the conspiracy.

The only evidence before the jury on the issue of whether Rosen had joined with Cantone in a conspiracy before July 28, 1964, consisted of one Pipitone's testimony that he cashed twin double tickets for appellants during the period between May 14 and July 29, 1964, and one Aquilato's testimony that he cashed tickets for appellants between April and November of 1964. The first specific instance Pipitone was able to recall was that of July 28th, which did not involve Rosen. Aquilato was unable to recall *any* specific instance. Several witnesses stated that they saw the appellants together at Yonkers and Roosevelt Raceways before July 28, 1964, but that fact, without more, cannot establish that they were conspiring. See e. g., United States v. Di Re, 332 U.S. 581, 593, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Causey v. United States, 352 F.2d 203, 207 (5th Cir. 1965).

We hold that the evidence on this issue was insufficient to establish beyond a reasonable doubt that Rosen had joined with Cantone in a conspiracy before July 28, 1964. Though the jury could have found from Pipitone's testimony that there was a conspiracy between appellants on July 31, 1964, this finding can-

4. In his charge on this point Judge Cooper said:

"You will recall that the witness Pipitone testified that he cashed a winning Twin Double ticket given to him by the defendant Cantone on July 28, 1964.

"There was no testimony that the defendant Rosen was present. You may still find the defendant Rosen guilty of the crime charged on the second count relating to the cashing of this ticket if you find the following beyond a reasonable doubt:

"One, that the offense charged in the second count was committed by the defendant Cantone;

"Two, that at the time this offense was committed by the defendant Cantone, the defendant Rosen was a member of the conspiracy charged in count 1;

"And, three, that the offense charged in the second count was committed in furtherance of the conspiracy charged in count 1.

"This result follows from the nature of the conspiracy as I have explained it to you.

"The criminal intent to do the act is established by the formation of the conspiracy. If you find that the existence of the conspiracy and the membership in it of the defendant Rosen, and that the crime was in furtherance of the conspiracy, then the defendant Rosen must bear the responsibility for the commission of the crime, too."

not cure the insufficiency of the evidence to establish the existence of such a conspiracy three days earlier. The *Pinkerton* rationale is, therefore, inapplicable, and Rosen's conviction on the substantive count must be reversed. Cf. Thomas v. United States, 398 F.2d 531, 542 (5th Cir. 1968) (order denying petition for rehearing).

The trial judge's erroneous submission to the jury of the issue of Rosen's guilt on the substantive count and the giving of the *Pinkerton* charge undoubtedly influenced the jury's finding of Rosen's guilt on the conspiracy charge. We conclude that the errors with respect to the substantive count so tainted Rosen's conspiracy conviction that we must also reverse that count.

### III.

### Cantone's Appeal [5]

Cantone contends that the testimony of one Herbst concerning the cashing of twin double checks in January 1966 was inadmissible because the evidence directly relating to the conspiracy fails to show that it continued after the spring of 1965. The government argues that Herbst's testimony itself shows the continuation of the conspiracy.

The fact that the government did not offer proof of the conspiracy's continued existence at regular intervals [6] during the period charged does not require a finding that it had ended, absent some affirmative act of withdrawal by Cantone. See e. g., Hyde v. United States, 225 U.S. 347, 369, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); United States v. Borelli, 336 F.2d 376, 388–390 (2d Cir. 1964), cert. denied sub nom. Mogavero v. United States, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965).

It was not error for the trial judge to declare one of the government's witnesses to be a hostile witness and al-

low him to be cross-examined on the basis of a prior affidavit.

Cantone's other assignments of error are not persuasive. We affirm his conviction.

Reversed as to Rosen. Affirmed as to Cantone.

Friendly, Circuit Judge (concurring):

I concur in the reversal of Rosen's conviction. As to Cantone, I concur in the result.

---

5. Because of the disposition of Rosen's appeal, we need not consider the effect of these additional assignments of error on his case.

6. The jury could have credited Herbst's testimony that Cantone asked him to cash twin double tickets in mid-1965 as showing the continuation of the scheme.