UNITED STATES, Appellee,

v.

Private First Class Daniel WOODLEY, SSN 238–21–2440, United States Army, Appellant.

SPCM 16201.

U. S. Army Court of Military Review.

30 June 1982.

this is a case when those reasons would have been appropriate. *See United States v. Rodriquez, 9 M.J. 829 (A.C.M.R.1980).*

Captain John Lukjanowicz, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Major Robert C. Rhodes, JAGC.

Captain Paul E. Jordan, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Paul K. Cascio, JAGC.

Before CARNE, O'DONNELL and FOREMAN, Appellate Military Judges.

OPINION OF THE COURT

O'DONNELL, Judge:

The appellant was convicted of conspiracy to commit larceny, larceny and housebreaking in violation of Articles 81, 121 and 130 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921 and 930. His sentence to bad-conduct discharge, confinement at hard labor for four months, forfeiture of $334.00 pay per month for four months, and reduction to the lowest enlisted grade was approved by the convening authority.

I. SUFFICIENCY OF THE EVIDENCE.

The appellant contends initially that the evidence is insufficient to support the conspiracy conviction. The Government's case consisted of statements made by the appellant together with the testimony of several witnesses. On 9 September 1980, the members of the appellant's company went on an overnight field exercise at Fort Bragg, North Carolina. Three men remained behind—Private First Class Elliot McDade, Private Jeffrey Bennett, and the appellant. When the company returned the following day, Sergeant Thomas Pinson and Specialist Four Jeffrey Stock discovered that someone had broken into their barracks room and removed their stereo equipment, a television set, and a bicycle.

Private First Class McDade had been detailed as "door guard" while the company was in the field. His area of concern included the room occupied by Sergeant Pinson and Specialist Stock. McDade was authorized by Sergeant Pinson to enter his room to use his refrigerator. At about 1530 hours on 9 September, the appellant assumed the duties of door guard at McDade's request while McDade went to the post exchange. Upon his return about fifteen minutes later, McDade noticed that Bennett was with the appellant at the door-guard post. McDade resumed his duties as door guard while Bennett and the appellant went to the nearby dayroom to watch television.

Just before midnight, McDade asked Bennett to relieve him as door guard so that he could obtain some food. (McDade had not eaten for over 24 hours.) McDade also asked Bennett if he could use his automobile. Bennett agreed to relieve McDade but insisted that the appellant drive the car.

McDade and the appellant returned in about 45 minutes after an unsuccessful search for food. At least twice during the trip, McDade told the appellant that he had to get back to the post. The appellant said that he would get him back in time. According to McDade, the appellant was "taking his time" returning in that he drove below the posted speed limit—30 miles per hour in a 45 mile per hour zone. About two hours after his return, McDade entered Pinson's room to obtain a soft drink from the refrigerator. At this time, he noticed that the room had been entered and that several items were missing.

Subsequently, the appellant made a statement to the criminal investigators which provides pertinently as follows. The appellant and Bennett decided that they should enter Pinson's room and remove a portion of the stereo equipment to get even with Pinson and Stock because of perceived racial slurs. As the appellant understood the agreement, whatever was taken would later be returned to the owners. Bennett thereafter entered the room and removed the two stereo sets, a television set and a bicycle while the appellant was driving McDade and placed the property in the appellant's room. The appellant expressed surprise that Bennett took as much as he did and he argued with Bennett about it. The appellant and Bennett later lowered the items from the appellant's window and placed them first in Bennett's car and then into a car belonging to another soldier. The appellant later told Bennett he wanted to return the property.

Two days after the event, McDade asked the appellant "why he had done it," to which the appellant replied that he and Bennett "did it as a joke to get back at Stock and Pinson." Also, about the same time, a Private First Class Evans asked the

appellant if he had stolen the property. The appellant answered in the affirmative.[1] The appellant subsequently took one of the investigators to a place on post where he had secreted the bicycle belonging to Stock. He unlocked the bicycle and turned it over to the agent.

■■■ We are not satisfied that the evidence supports the findings of conspiracy to commit larceny. It is sufficient, however, to establish beyond a reasonable doubt that the appellant and Bennett conspired to commit wrongful appropriation of a portion of the stereo sets. Likewise, the evidence is insufficient to support the findings of the substantive offense of larceny. The evidence establishes that Bennett sometime after the original agreement determined to steal the property and in fact did so. But his actions went beyond the scope of the conspiracy and were not binding on the appellant as a co-conspirator. A conspirator is liable for a substantive offense committed by a co-conspirator only if the offense was committed during and in pursuance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Salisbury*, 14 U.S.C.M.A. 171, 33 C.M.R. 383 (1963). Accordingly, the appellant may be found guilty as a co-conspirator only of wrongful appropriation.

The military judge also submitted the substantive offenses to the court on an aiding and abetting theory. Again, however, the evidence does not support a finding that the appellant shared Bennett's intent to steal the equipment. It supports only a finding, consistent with the object of the conspiracy, that the appellant aided and abetted a wrongful appropriation of a portion of the stereo sets. *See United States v. Jackson*, 6 U.S.C.M.A. 193, 19 C.M.R. 319 (1955).

■■■ We recognize that the appellant did help Bennett to remove the property from his room and did have possession of the bicycle. However, these acts occurred after he discovered that Bennett had stolen the property rather than wrongfully appropriating it as agreed and cannot be used to support findings of larceny by the appellant. Likewise, the appellant's statement to Evans that he had stolen the property does not under the circumstances dictate a different result. We construe his use of the term "stole" merely as a layman's incorrect discription of his actions in assisting Bennett in removing the stolen property and not as an admission that he intended from the outset to aid in the commission of a larceny.[2]

■■■ As to the housebreaking charge, we are satisfied beyond a reasonable doubt that the evidence is sufficient to support those findings of guilty.

## II. INSTRUCTIONS.

Finally, the appellant contends that the military judge incorrectly injected principles of aiding and abetting into the proceedings. The judge instructed the members that they must first determine if the appellant was guilty of conspiracy. If they found him not guilty of that offense, they also had to acquit him of the substantive offenses. On the other hand, if they convicted the appellant of the conspiracy, they

1. Although the appellant contends that his statements are uncorroborated and therefore inadmissible, we are satisfied that there is sufficient independent evidence to corroborate "the essential facts admitted to justify sufficiently an inference of their truth." Military Rules of Evidence 304(g).

2. We have considered those cases which hold that a person is not guilty of larceny or wrongful appropriation if he takes the property of another to teach him not to leave it lying around where it would be susceptible to theft. *See, e.g., United States v. O'Hara*, 14 U.S.C. M.A. 167, 33 C.M.R. 379 (1963); *United States v. Roark*, 12 U.S.C.M.A. 478, 31 C.M.R. 64 (1961). The basis for this conclusion is that the accused has an innocent purpose and no criminal intent. In the instant case, however, we are satisfied that the appellant's purpose was to get even with Pinson and Stock, hardly an innocent frame of mind. Under the circumstances, the appellant had the requisite criminal intent to temporarily deprive the owners of their property. *See United States v. Conklin*, 46 C.M.R. 942 (1972), *pet. denied*, 22 U.S.C. M.A. 623 (1973).

would then consider the substantive offenses under two separate theories. Under the first they could, if warranted by the facts, find the appellant guilty of the substantive offenses as a conspirator who is liable for the offenses committed by a co-conspirator. *Pinkerton v. United States, supra.* Under the second theory, the court could find the appellant guilty of the substantive offenses as an aider and abettor to the principal, Bennett.

■ Essentially, the appellant's position is that he cannot be both a conspirator and an aider and abettor. We disagree. In *Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), the Court held that it was permissible to find the accused guilty of conspiracy and, on a theory of aiding and abetting, of several substantive offenses. The Court stated at 619–20, 69 S.Ct. at 770:

> We see therefore no reason to exculpate [the accused] as an aider and abettor. There was no inadequacy in the charge to the jury on that theory. Nor was the submission in conflict with *Pinkerton v. United States, supra.* The rule of that case does service where the conspiracy was one to commit offenses of the character described in the substantive counts. Aiding and abetting has a broader application. It makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy. And if a conspiracy is also charged, it makes no difference so far as aiding and abetting is concerned whether the substantive offense is done pursuant to the conspiracy. *Pinkerton v. United States* is narrow in its scope. Aiding and abetting rests on a broader base; it states a rule of criminal responsibility for acts

which one assists another in performing. The fact that a particular case might conceivably be submitted to the jury on either theory is irrelevant. It is sufficient if the proof adduced and the basis on which it was submitted were sufficient to support the verdict.

Although the two theories of liability can in practice involve complex principles of law, we are satisfied that the judge's instructions, which were given without objection, did not mislead the court. He carefully distinguished between the two theories in his instructions and informed the court that liability as an aider and abettor applied only to the substantive offenses and not to the conspiracy charge. Indeed, the judge provided the appellant with a windfall by advising the members that they could not find him guilty of the substantive offenses without first convicting him of the conspiracy charge. Under the circumstances, the judge did not err by instructing on aiding and abetting as that theory of liability was raised by the evidence.[3]

Only so much of the findings of guilty of Charge I and its specification is affirmed as finds that the appellant did, at the time and place alleged, conspire with Private El Jeffrey Bennett, to commit an offense under the Uniform Code of Military Justice, to wit, wrongful appropriation of the property of Specialist Four Thomas A. Pinson and Private First Class Jeffrey Stock, of some value, and in order to effect the object of the said conspiracy, the said Private Bennett removed portions of stereo sets, of some value, the property of the said Specialist Pinson and Private First Class Stock, from Room 212, Building C–7535, Fort Bragg, North Carolina. Only so much of the findings of guilty of Charge II and its

3. In a related argument, the appellant avers that the judge should not have given the *Pinkerton* vicarious liability charge, contending that that instruction is inapposite when the evidence of the conspiracy must be inferred from an accused's involvement in the substantive offenses. Whatever validity that argument might have under those circumstances, it has no applicability in the instant case where the evidence of the conspiracy was clearly established from the appellant's corroborated state-

ment as well as from other evidence of a circumstantial nature. *Cf., United States v. Miley,* 513 F.2d 1191 (2d Cir.), *cert. denied, sub nom. Vavarigos v. United States,* 423 U.S. 842, 96 S.Ct. 75, 46 L.Ed.2d 62 (1975); *United States v. Sperling,* 506 F.2d 1323 (2d Cir. 1974); *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Cantone,* 426 F.2d 902 (2d Cir.), *cert. denied,* 400 U.S. 827, 91 S.Ct. 55, 27 L.Ed.2d 57 (1970).

specification is affirmed as finds that the appellant did, at the time and place alleged, wrongfully appropriate portions of stereo sets, of some value, the property of Specialist Four Thomas A. Pinson and Private First Class Jeffrey Stock. The findings of guilty of Charge III and its specification are affirmed. Reassessing the sentence on the basis of our action herein and on the basis of the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for two months, forfeiture of $334.00 pay per month for two months and reduction to the lowest enlisted grade.

Senior Judge CARNE and Judge FOREMAN concur.